Me. Justice VanValkenburgh
delivered the opinion of the court.
On the 3rd day of March, 1874, Ely, Candee & Wilder commenced an action against one Louis Sylvester, claiming to recover $2,000. On the same day a writ of garnishment was issued against the appellants, Huot, Kelly & Co., requiring them to set forth what goods and chattels, rights and credits, money or effects, they had in their hands, custody or control belonging to the said Louis Sylvester, and in what sum they were indebted to him. Huot, Kelly & Co. answered that they had no goods, chattels, rights, credits, money or effects in their hands or custody, or under their control, belonging to the said Sylvester at the time of the service of the said garnishment; but answered that on the 8th day of September, A. D. 1873, they made a promissory note whereby they promised to pay, twelve months after its date, to the said Louis Sylvester, or his order, the sum of sixteen hundred and fifty-five 97-100 dollars. That said note was unpaid and had several months to run before its maturity. That they had no knowledge as to who was the holder of the said note, but that about the time of the service of the -notice of garnishment upon them the note was *201 still in the possession of the defendant, Sylvester. The plaintiffs below traversed the answer of Huot, Kelly & Co., the garnishees, and allege that on the said 3rd day of March, 1874, the said garnishees were indebted to said Louis Sylvester on the note mentioned in their said answer, and that the said note for the sum of $1,655.97-100 was in the possession of one D. M. Hammond for the defendant, Sylvester, and was on the 6th day of March, 1874, delivered up on the order of the defendant, Sylvester, to Patrick Kelly, one of the firm of Huot, Kelly and Company, in the store of, and -in the presence of, the said garnishees, with the understanding that the garnishees stood security for the defendant, Sylvester, to release1 the attachment and garnishment in this cause; that they failed to carry out the arrangement.
On the 16th day of May, 1874, a judgment was recovered and entered against the defendant, Louis Sylvester, in favor of the plaintiffs, Ely, Candee & "Wilder, for the sum of $1,70.0.35.
This cause against the garnishees was tried on’ the 29th of October, A. D.'1878, and a verdict was given for” the plaintiff. Whereupon it'was ordered that judgment be entered in favor of the plaintiffs, Ely, Candee and Wilder, against the garnishees, Huot, Kelly & Co., for the sum of $2,185.85.
The counsel for garnishees moved the court for a new trial for the reasons:
1. “That the verdict was contrary to the evidence, and contrary to the law.”
2. “In that the court erred in charging the jury in effect that the peculiar circumstances of said cause constituted an exception to the general rule, that the maker of negotiable paper cannot be garnished, before maturity of, the same, or made liable thereby.”
3. “That the jury assessed a large amount of interest and allowed what accrued and became due long subsequent to the service of said garnishment, and the answer of said garnishees, and which was not due and owing at the time of the service of the answer, and for which the garnishees are not liable.
This motion was heard on the 17th April, 1879, and was denied by the court, and judgment was rendered against the garnishees for $2,185.85.
To this opinion and judgment of the court the garnishees, Huot, Kelly & Co., by their counsel duly excepted.
’Erom this judgment the garnishees bring their appeal and assign the .following errors:
1. The court erred in refusing to charge “that if it appeared that the note was held by an individual partner as a personal security or collateral, that such was not the possession of the firm, and the garnishees as a firm would not be liable.”
2. The court erred in charging, that a negotiable paper, before maturity, would under some circumstances be the subject of garnishment.
3. The court erred in allowing a large amount of interest to be assessed, which accrued subsequent to summons in garnishment, and on notes which were not piuven.
4. That the court erred in overruling the motion of defendants to set aside the verdict of the jury and for a new trial.
It can hardly be claimed that this note, while in the hands of Mr. Hammond for the benefit of Mr. Kelly, to secure him against liability on his individual bond a3 security in the replevin suit, was under the control or in the possession of Huot, Kelly & Co., nor would the fact of its delivery to Mr. Kelly himself, by Mr. Hammond, upon the written order of Sylvester after the writ of garnishment had been, served,- entitle the garnishees to the possession or control of the note. There Was an arrangement made between Sylvester and Kelly, as a private individual, not as a member of the firm of Huot, Kelly & Co., that Kelly should become surety on a replevin bond, and this note against the firm of which he was a member was to be held to secure him against loss or damage by reason of his becoming such security. It does not appear from the evidence or in any manner in the record, that the suit in which the replevin bond was given is not still pending, nor does it appear hut that Mr. Kelly is still liable upon that bond. The garnishees allege in their answer that they had no knowledge as to who was the holder of said note, but they also allege that about the time of the service upon them of the notice of garnishment the note was still in the possession of the defendant Sylvester. They further say that “they had no goods, chattels, rights, credits, money or effects in their hands, or custody, or under their control, belonging to the said Sylvester at the time of the service of the said garnishment.”
But one person, Mr. Hammond, who was the person holding the note for the benefit of Mr. Kelly, was examined upon the trial of this cause, and he testified1 as follows: “That Patrick Kelly, of the firm of Huot, Kelly & Co., was heretofore surety on a replevin bond, in a certain suit instituted in said county by Ely, Candee and Wilder against John Hoffman, for the recovery of certain machinery in a saw mill at Eernandina, Florida, possession of which was at the time of said suit held by said Hoffman, but who had sold the mill to Louis Sylvester. That sometime thereafter, in the year 1873, the saw mill before mentioned was purchased by Huot, Kelly & Co., from Louis Sylvester, while said replevin suit was yet pending, and that Huot, Kelly & Co., in part consideration therefor, executed and delivered to Louis Sylvester their promissory note for sixteen hundred and .fifty-five dollars and ninety-seven cents, payable twelve months after date, and dated the 8th day of September, 1873. That by agreement between Louis Sylvester and P. Kelly, the surety on the re-plevin bond, (aforesaid in the Hoffman suit,) the said note of Huot, Kelly & Co. was placed in the hands of D. M. Hammond to hold to indemnify P. Kelly in event of loss to him in consequence of said replevin suit, and that the note was so accepted and held by Hammond. That about that- time a suit of attachment was commenced by Ely, Candee and Wilder against Louis Sylvester, and a stock of merchandise owned by Sylvester was attached, and at the same time, to-wit: on the third day of March, 1874, a writ of garnishment was issued in said cause, out of the Circuit Court, and served on Huot, Kelly & Co. That Sylvester, desiring to procure a bond for the release of the goods, applied to Huot, Kelly & Co., to sign it as surety, which they I believe consented to do on consideration that the note in question should be delivered to them as collateral, which arrangement was assented to, but the bond was never signed by Huot, Kelly & Co., and the goods were not replevined. Sylvester about that time sent a written order to him, Hammond, (the holder of the note to indemnify Kelly as aforesaid) requesting him to deliver it to Mr. Kelly. Mr. Kelly brought the order for the note, and the note was delivered to Mr. Kelly, by authority of the order from Sylvester, about three.days after the service of the writ of garnishment on Huot, Kelly & Co. The note was a negotiable note and was not due at the time it was delivered to Mr. P. Kelly, and did not mature until the 8th of September, following, about seven months.” On his cross-examination, he testified that he “was told* by Mr. Kelly that the note was placed by him in the desk, in the store of Huot, Kelly & Co., and was taken out> and carried off by Louis Sylvester. He 'did not deliver it to him. The note was after-wards negotiated before maturity, and is now held in New York, and' a suit pending on it against Huot, Kelly & Co.”
*202 We cannot s.ee how, upon- the answer of the garnishees and this evidence presented upon the trial, the plaintiffs were entitled to recover. At the timer of the service of the notice of garnishment the note was in the possession of Mr. Hammond as collateral to the liability of Kelly on the bond, and was subsequently transferred to Kelly's own hands and (lid not pass into the possession of the garnishees. The counsel for the garnishees requested the court to charge the jury that if they found from the evidence that the note in question had been delivered by Huot, Kelly & Co. to Sylvester prior to said garnishment, and was held at the time said garnishment was served by Mr. Kelly, a member of said firm, to indemnify him individually against loss on a bond signed by Mr. Kelly individually as a security for Sylvester, then' the note was not within the possession or custody of the firm, and the firm could not be held liable by virtue of said garnishment. The court declined so to charge. An exception was taken, and this is made the first ground of error upon the part of tho appellants.
The rule in regard to the possession with reference to privity of contract and of interest between the garnishee and defendant is, that the garnishee must not only have actual possession of the defendant's property at the time, but there must be, except in cases of fraudulent dispositions of property, privity, express or implied, of contract and’ interest between the garnishee and the defendant, by which the defendant would have a right of action or an equitable claim against the- garnishee to recover the property for his own use, at the present or some future time. Drake on Attachment, §485.
If the note was not in the possession of, or in the custody and control of, Huot, Kelly & Co., under an arrangement by and with the defendant, Sylvester, so that there was privity of contract and interest between them by which the defendant would have his right of action, the plaintiffs were not entitled to recover, and the request of the counsel of the garnishees that the court so charge the jury should have been complied with.
The second assigned error is, “that the court erred in charging that a negotiable paper before maturity would, under some circumstances, be the subject of garnishment.” It does not appear that the court so charged. The language of the charge, as it appears in the bill of exceptions, is, “as a general rule the maker of a negotiable promissory note cannot be bound by garnishment in a suit against the payee named in said note.” This, we think, is the correct general rule. The maker of a negotiable note should not be charged as garnishee of the payee while such note is still current, unless the garnishee has it in his possession or under his control. In the‘case of Stone vs. Dean, 5 N. H., 502, the court says: “It has always been considered as settled in .this State that a trustee who has given a negotiable note to .the principal cannot be charged as a trustee on account of such note. The reason of this rule is founded upon the negotiable quality of such note. If the trustee could be charged in such a case, then it might happen that either a Iona fide purchaser of the note must lose the amount of it, or the maker, without any fault on his part, be compelled to pay it twice. To avoid such a dilemma the rule was established. But in this case, when the process was served upon the trustee, he had the notes he had given imhis own hands and under his own control; and these notes could not be transferred to any other person in the ordinary course of business while he held them, nor can he be held to pay them again if he shall be charged in this suit on that account. The reasons on which the rule is founded do not then appear to exist in this case.” In that case the trustee was charged with the amount of his own notes. See Hinsdill vs. Safford, 11 Vermont, 309; Hutchins vs. Evans, 13 Vermont, 541; Myers vs. Burman, 9 Iredell, 16; Carson vs. Allen, 2 Chandler, 123; Drake on Attachments, §588, 589.
Eor the reasons assigned the judgment must be reversed and a new trial awarded.