ALLEN, Acting Chief Judge.
The appellant was the plaintiff below and appeals from an order discharging a writ of garnishment previously issued against the Broward National Bank of Fort Lauder-dale which had been garnished in an action brought by the plaintiff, Universal C. I. T. Corporation against Herbert S. Faris, Incorporated, and Herbert S. Faris, individually.
The Broward National Bank of Fort Lauderdale paid a cashier’s check to the Manufacturers Trust Company of New York which check had been deposited by the endorsee, Gordon I. Novod, with the said bank. Said check and its payment by the garnishee form the subject matter of this cause. The next six paragraphs are the facts as stipulated by the parties to this appeal.
On the 19th day of January, 1959, appellant filed a complaint for damages against the defendants, Herbert S. Faris, Incorporated, and Herbert S. Faris, individually, alleging nonpayment by the defendants of *845 a demand negotiable promissory note in the prineipal amount of Sixty Thousand Dollars ($60,000) ; that on the 19th day of January, 1959, appellant filed a writ of attachment on a 42-foot Chris Craft Constellation boat believed to be owned by the defendant, Herbert S. Faris; that said boat, before the execution of the writ of attachment, had been transferred by the defendant, Herbert S. Faris, to a third party bona fide purchaser; that an attachment bond was filed by the appellant with the lower court on the 19th day of January, 1959, for the protection of the defendants, Herbert S. Faris, Inc. and Herbert S. Faris, individually, in the principal sum of $60,-000; that said attachment bond remained in effect until the order of the lower court quashing the writ of garnishment which was entered on the 13th day of November, 1961; that the Rodi Boat Company of Fort Lauderdale, Florida, as the brokering agent for the sale of said boat, had remitted the net sales price of the said boat to the defendant, Herbert S. Faris, in the form of a cashier’s check, issued by the Broward National Bank of Fort Lauderdale, Florida, at the request of said Rodi Boat Company, against its account with said bank; and that said cashier’s check was number A-59911, dated the 15th day of January, 1959, in the principal amount of Sixteen Thousand Seven Hundred Eighty-Two Dollars and Three Cents ($16,782.03). The cashier’s check was delivered by the garnishee bank to a representative of the Rodi Boat Company.
On the 19th day of January, 1959, a writ of garnishment was issued on behalf of the appellant and was served upon the appellee on the 19th day of January, 1959. There was the following notation on the writ of garnishment:
“(Cashier’s Check #A59911, dated January 15, 1959, payable to Herbert S. Faris, in the amount of $16,782.03, issued by the Broward National Bank and Rodi Boat Company.)”
On the 20th day of January, 1959, subsequent to the filing of the garnishee’s Answer, the said cashier’s check was received by appellee for payment through regular banking channels with the following endorsement on the back of said check:
“Pay to the order of
Gordon I. Novod
(Signed) Herbert S. Farris
(Signed) Gordon I. Novod.
“Gordon I. Novod, SPEC
36 W. 44th St.,
N. Y. 36, N. Y.”
The cashier’s check was not personally presented by the defendant, Herbert S. Faris, or the endorsee, Gordon I. Novod, but was transmitted through regular banking channels for collection and payment by the Manufacturers Trust Company of New York, which bank had credited same to the special account of Gordon I. Novod. The garnishee bank had no actual knowledge that the endorsee, Gordon I. Novod, or the Manufacturers Trust Company of New York were other than holders in due course of said cashier’s check, unless the stipulated statement of facts set forth herein constitute notice, either actual or constructive.
For purposes of this case and this appeal, it was further stipulated that the endorsee on the back of said cashier’s check, Gordon I. Novod, was in fact at the time of the endorsement the attorney for the defendant, Herbert S. Faris, although the garnishee bank had no actual or constructive notice or knowledge of this fact or other reason to believe that such relationship existed. That the proceeds of the cashier’s check were received by the said Gordon I. Novod for, and on behalf of the defendant, Herbert S. Faris, and were subsequently paid by the said Gordon I. Novod to the defendant, Herbert S. Faris although,- again, these facts were not within the actual or constructive notice or knowledge of the garnishee bank at any time material to this cause.
On the 27th day of January, 1959, appel-lee filed a motion to quash the writ of garnishment ; that the lower court did, on the *846 15th day of November, 1961, enter its order quashing and dismissing the writ of attachment heretofore obtained by the appellant.
It is our view that the lower court was correct in holding that, under the facts stipulated in this record, the garnishee bank was not liable for paying the check to the third party, Manufacturers Trust Company of New York.
The appellee cites the following questions and legal opinions appearing in Paton’s Digest of Banking Law as set forth in Volume I, at pages 153 and 157:
"Question: Is a bank’s liability to the payee or other holders of a negotiable instrument, such as certificates of deposit, cashier’s check, certified check, or banker’s acceptance, subject to a writ of garnishment? In general, is a person’s primary liability on a negotiable instrument to the holder subject to a writ of garnishment?
”Opinion: The fundamental difficulty with permitting garnishment is the possibility that the instrument will be negotiated to a holder in due course whose rights will conflict with those of the garnishing creditor.
* * * * * *
"Question: A bank issued a cashier’s check to a depositor. Later the same day, the bank was served with a writ of garnishment on behalf of the creditor of the depositor. The next morning, the cashier’s check was presented to the bank by an endorsee. Should the bank pay the check or will it, by payment, incur liability to the garnishing creditor?
“Opinion: The bank should pay the check and will not thereby incur liability to the garnishing creditor since the holder, as far as the bank knows, is a holder in due course. Even in jurisdictions where garnishment of a liability on a negotiable instrument is permitted, the rights of holders in due course are protected.”
In the case of Huot, Kelly & Co. v. Ely, Candee & Wilder, 17 Fla. 775, the Florida Supreme Court at page 782 said:
“ * * * The maker of a negotiable note should not be charged as garnishee of the payee while such note is still current, unless the garnishee has it in his possession or under his control. In the case of Stone vs. Dean, 5 N.H., 502, the court says: ‘It has always been considered as settled in this State that a trustee who has given a negotiable note to the principal cannot be charged as a trustee on account of such note. The reason of this rule is founded upon the negotiable quality of such note. If the trustee could be charged in such a case, then it might happen that either a bona fide purchaser of the note must lose the amount of it, or the maker, without any fault on his part, be compelled to pay it twice. * * * ’ ”
In Hollopeter & Post, Inc. v. Saenz, 133 Fla. 279, 182 So. 906, our Supreme Court held that the maker of a negotiable note should not be charged as a garnishee of the payee while the note is current, in the absence of a showing that the garnishee has the note in his own possession and under his own control. In the Court’s opinion it quoted from the Huot case, supra, as follows :
“ ‘The maker of a negotiable note should not be charged as garnishee of the payee while such note is current, unless it appears that the garnishee has it in his own possession and under his. own control.’ ”
The Court further said:
“This rule has never been changed in this jurisdiction. In the present case, the whole record shows that at the time the garnishment was served the note was current; that it was negotiable, and furthermore, that it was no longer *847 held by or constituted the evidence of indebtedness to the defendant-debtor in the suit in which garnishment was issued.”
It should be observed that, at the time the cashier’s check was presented for payment to the bank which had issued it against the account of the Rodi Boat Company and made it payable to the defendant, Herbert S. Faris, the check had been endorsed to Gordon I. Novod who, in turn, had endorsed the check to the Manufacturers Trust Company of New York.
In the case of Hiatt v. Edwards, 52 Ga. App. 152, 182 S.E. 634, it was held that the drawer of a check is not subject to garnishment by the payee’s creditor where the check has been endorsed and delivered to a third person by the payee before service of the garnishment on the drawer.
In Whitney, The Law of Modern Commercial Practices, § 63 (1958), a cashier’s check is defined as follows:
“A cashier’s check is a check drawn by a bank upon itself payable to a third person. It amounts to a promise by the bank to pay payee directly and so, in effect, is a promissory note by the bank.
“The value of an ordinary check depends solely on the credit of the drawer. The creditor, in taking it, assumes the risk that the bank may dishonor it because the drawer has insufficient funds on deposit to cover the check, or, if he has sufficient, that the drawer may have given the bank a stop payment order against that check. Of course, the creditor could have avoided such risk by asking the drawer to have the check certified, but the drawer may not want to go to that trouble, and if the creditor had had the bank certify it, he would lose all his rights against the drawer in case the bank was unable to pay. To avoid all this, the creditor often finds it simpler and safer to ask his debtor to give him a cashier’s check drawn on the bank where he keeps his account. Besides eliminating the risks just mentioned, this form of instrument has the further advantage that the creditor may take his time in presenting it to the bank for payment. Since the bank is the only one liable to pay it cannot complain of the delay in presenting it for payment.”
The cashier’s check has most of the attributes of travelers’ checks. Such are like a cashier’s check in that the drawer and drawee are the same. They may be drawn upon a bank, but are often drawn upon an Express Company or Travel Agency which may issue them. The countersignature of the traveler is, in legal effect, an endorsement in blank by the payee, and therefore the check becomes payable to bearer and negotiable by delivery.
In Michie on Banks and Banking, Vol. 5B, Ch. 9, § 251 (1950 ed.), the discussion on cashier’s checks states :
“A cashier’s check is the bank’s own check which is issued by the cashier at the request of a depositor against whose account it is charged. Such check is strictly commercial paper and every holder is presumed to be a holder for value, and the burden of showing that he is not a bona fide holder rests upon those who assert it. Such a check is the substantial equivalent of a certified check, and the deposit represented by the check passes to the credit of the check holder, who is thereafter a depositor to that amount. A bank which issues a cashier’s check is not bound to know the signature of the payee therein. A cashier’s check, being merely a bill of exchange drawn by a bank on itself, and accepted in advance by the act of its issuance, is not subject to countermand by the payee after in-dorsement, as is an ordinary check by the drawer, and the relations of the parties to such an instrument are analo *848 gous to those of the parties to a negotiable note payable on demand *
The appellee bank was liable to the Manufacturers Trust Company of New York on its own check and therefore required to remit the sum due to the holder of the check.
Affirmed.
KANNER and SMITH, JJ., concur.