427 So.2d 815 (1983)
W.L. GIEGER, Appellant,
v.
SUN FIRST NATIONAL BANK OF ORLANDO, Etc., Henrietta Gieger; Etc.; and J. Nolan Carter, Appellees.
No. 82-486.
District Court of Appeal of Florida, Fifth District.
March 9, 1983.
*816 Ronald L. Sims of Hoffman, Hendry, Stoner, Sims & Sawicki, Orlando, for appellant.
Patrick T. Christiansen of Akerman, Senterfitt & Eidson, Orlando, for appellee Sun First National Bank.
No appearance for appellees Gieger and Carter.
ORFINGER, Chief Judge.
On May 15, 1978, appellee Sun First National Bank of Orlando obtained a final judgment against Henrietta W. Gieger and W.L. Gieger, then husband and wife, in the amount of $24,193.17. To collect this debt, Sun Bank initiated garnishment proceedings against J. Nolan Carter and his wife as debtors of the Giegers. The Carter debt to the Giegers was in the form of a promissory note and second mortgage for $47,000 given to the Giegers as part of the purchase price for the Giegers' homestead property sold to Carter. Ultimately the trial court issued an order dissolving that writ of garnishment and on appeal this court affirmed, stating that the note and mortgage taken back by the Giegers was a "substitute homestead" for a reasonable time until the mortgage could be reinvested into a new homestead. Sun First National Bank of Orlando v. Gieger, 402 So.2d 428 (Fla. 5th DCA 1981).
Following the issuance of this court's mandate, appellant Sun Bank again obtained a writ of garnishment against J. Nolan Carter (but not his wife) as garnishee, which is now the subject of this appeal. The amount requested in Sun Bank's motion was $27,651.07.
The garnishee, J. Nolan Carter answered the writ stating:
That at the time of receiving this Writ of Garnishment and until Answering this Writ of Garnishment, the Garnishee herein, J. Nolan Carter, is obligated to W.L. Gieger and Henrietta Gieger, his wife, pursuant to that certain Note and Mortgage dated February 21, 1980... .
A copy of the note and mortgage was attached to the answer, indicating that the note was payable in monthly installments of $570.58 each. It was not claimed by any party that the monthly payments were in arrears. Based on this answer, Sun Bank filed a motion for judgment on the pleadings.
Thereafter, Gieger moved to dissolve the writ of garnishment, alleging as grounds therefor: (1) that the note and mortgage sought to be garnished constituted homestead property and thus was exempt from garnishment; (2) that the motion for judgment on the pleadings was overbroad because it sought a continuing garnishment and future payments on a negotiable instrument were not subject to garnishment; and (3) that he had assigned his interest in the note and mortgage to Ernest A. and Viola M. Zuidema (Zuidema) who were thus indispensable parties to the action. The documentation supporting the claimed "assignment" *817 was attached to the motion. After hearing, the trial court denied Giegers' motion to dissolve the writ, granted Sun Bank's motion for judgment on the pleadings and directed Carter, the garnishee, to "make payments due and to become due under the subject note and mortgage ..." to Sun Bank. Gieger appeals and we reverse.
Sun Bank contends that Gieger has no standing to appeal the garnishment order because his former wife Henrietta W. Gieger, the co-payee of the note, did not join in the motion to dissolve, nor does she appeal the order. Sun Bank relies on section 673.116, Florida Statutes (1981), which provides in part:
An instrument payable to the order of two or more persons:
.....
(2) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.
This section does not apply here because Gieger is not trying to negotiate, discharge or enforce the note in this action. He is merely attempting to protect his claimed interest in the note from what he contends is a wrongful garnishment, and if he continues to have an interest in the note and mortgage, he has standing to try to protect it.
The record reveals that there was no assignment of the Carter mortgage to Zuidema. Instead, the Giegers pledged that mortgage to Zuidema as additional security for a debt owed by the Giegers to Zuidema, resulting from the purchase of a condominium unit from Zuidema by Mrs. Gieger.[1] The Giegers were still the owners of the Carter mortgage, subject only to the collateral pledge of the proceeds until Zuidema was paid off.
Generally, one has standing when he has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636; General Development Corporation v. Kirk, 251 So.2d 284 (Fla. 2d DCA 1971). In this case, appellant contends that he not only has an interest, but is an aggrieved party injured by the lower court's ruling and that therefore he should be allowed to bring this appeal. See King v. Brown, 55 So.2d 187 (Fla. 1951). His potential injury, it is argued, will occur when the payments incident to the garnished note, which have been committed by a pledge agreement to the payment of the mortgage on Mrs. Gieger's new home, are diverted to pay off the Gieger's debt to Sun Bank. This is sufficient to give him standing.
We turn then to the contention that the writ of garnishment was overbroad insofar as it attempted to garnish future (not yet due) installments on the promissory note, because it required Carter, as payee, to pay to Sun Bank not only payments which were then due, but installment payments which would become due in the future. Sun Bank contends that Carter's answer to the writ of garnishment acknowledged that his debt was due, thus justifying the judgment on the pleadings, and that Gieger cannot dispute this answer. But, Sun Bank's contention is based on an incorrect premise, because Carter's answer merely acknowledged "... that at the time of receiving this writ ... and until answering ... this garnishee ... is obligated to W.L. Gieger and Henrietta Gieger ... pursuant to that certain note and mortgage dated February 20, 1980, true copies of which are attached hereto ..." (emphasis supplied). The attachment shows what is prima facie a negotiable promissory note in the principal sum of $47,000, payable to the Giegers in monthly installments of $570.58 each, including principal and interest at 8% per annum, until paid in full. Nowhere in any of the *818 pleadings was it alleged that the note was delinquent or that any payments were overdue.
The rule in Florida relating to garnishment of negotiable notes is as stated in Huot, Kelly & Co. v. Ely, Candee & Wilder, 17 Fla. 775 (1880), and quoted in Universal C.I.T. Credit Corp. v. Broward Nat'l Bank of Fort Lauderdale, 144 So.2d 844 (Fla. 2d DCA 1962), and Hollopeter & Post, Inc. v. Saenz, 133 Fla. 279, 182 So. 906 (1938):
The maker of a negotiable note should not be charged as garnishee of the payee while such note is current, unless it appears that the garnishee has it in his own possession and under his own control... . `The reason of this rule is founded upon the negotiable quality of such note. If the trustee could be charged in such a case, then it might happen that either a bona fide purchaser of the note must lose the amount of it, or the maker, without any fault on his part, be compelled to pay it twice. To avoid such a dilemma the rule was established.'
Although referring to the quoted portion as dictum, we have recognized it. See Coleman Music & Games Co., Inc. v. McDaniel, 411 So.2d 193 (Fla. 5th DCA 1981). This rule has never been changed in this jurisdiction.
The trial court was thus in error in ordering garnishment of future payments not due at the time the answer to the writ of garnishment was filed, or at the time the writ was served, or at any time between such times. See section 77.04, Florida Statutes (1981).
The final judgment is therefore reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] The recorded instrument in question is headed up "Pledge Agreement." The body of the instrument clearly states that the Carter note and mortgage is pledged to secure payment of the debt from Gieger to Zuidema; that should the Carter mortgage go into default, Gieger would foreclose it; that should Gieger go into default on the Zuidema mortgage, Zuidema could foreclose on the collateral of the Carter mortgage. Thus it is clear that the Giegers retained ownership of the Carter mortgage, subject to this collateral pledge.