24789. HIATT, receiver, *v.* EDWARDS.

DECIDED NOVEMBER 18, 1935.

*W. L. Ferguson, H. A. Wilkinson, Henry A. Wilkinson,* for
plaintiff. *R. R. Jones,* for defendant.

JENKINS, P. J. It was said by this Court in *Parker-Fain Grocery Co.* v. *Orr,* 1 *Ga. App.* 628, 631 (57 S. E. 1074) : "The presumption is that a check is only intended as conditional payment, and if dishonored and the holder is not · guilty of laches causing loss to the drawer, the latter is liable upon the original cause or debt for which the check was given, . . and a check is always so far payment, until dishonored, that, after its delivery, the drawer can not be garnished as debtor of the payee in respect to the debt for which the check is given." Similar language was used in *Watt-Harley-Holmes Hardware Co.* v. *Day,* 1 *Ga. App.* 646, 648 (57 S. E. 1033). The authority for these statements seems to have been Morse on Banks and Banking (4th ed.), § 543, cited in the cases mentioned. What was thus said, however, was later questioned by the court in *Kirby Planing Mill Co.* v. *Titus,* 14 *Ga. App.* 1, 3-4 (80 S. E. 18), where the language quoted was said to have been obiter. The decision in the instant case, has, therefore, been reached. with considerable difficulty. There are two well-recognized principles of law, relied on by counsel for the garnishing creditor, the plaintiff in error, which have rendered the decision difficult. The first of· these is that "bank checks and promissory notes are not payment until themselves paid." Code of 1933, § 20-1004. This general rule obtains unless the check or note is acceptable by the creditor as payment, or it is agreed that it is to be so taken. *Mims* v. *McDowell,* 4 *Ga.* 182; *Butler* v. *Barnes,* 8 *Ga. App.* 513 (3) (69 S. E. 923). The second of these principles is, that, under the provisions of the negotiable-instruments law, "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check." Code, § 14-1707. This. latter statute, which is in accordance with what seems to have always been the majority rule, merely follows that rule as previously adopted in this State. In *Reviere* v. *Chambliss,* 120 *Ga.* 714, 715-716 (48 S. E. 122), it was held that "an unaccepted check, drawn in the ordinary form, not describing any particular fund or using words of transfer of the whole or any part of any amount standing to the credit of the drawer, does not amount to an assignment at law or in equity of the money to the credit of the drawer." In the opinion it was said: "The crucial test is that the assignor

must not retain any control over. the fund,—any authority to. collect, or any power of revocation. The transfer must be of such a character that the holder of the fund can safely pay, and is compellable to do so, though forbidden by the assignor. Christmas *v.* Russell, 81 U. S. 84 (20 L. ed. 762)."

1. We deal now with the first question involved, irrespective of any question made by the indorsement of the check by the payee client to a third person. That is to say, we now consider merely whether the delivery of the check by the attorney to his client, representing as it did an order on the ·bank for the transfer by the bank of a fund belonging to the client, would render the fund free from process of garnishment of the attorney by a creditor of the client. If the attorney's order to the bank to turn over to his client the money had been merely a check given for the purpose of paying a debt owing by the attorney to his client, instead of an order to turn over funds already belonging to the client, the Code provision that a check is not payment until itself paid would seem to throw considerable doubt on what was said by this court in the two decisions above quoted from in the first volume of the Georgia Appeals Reports, although there is respectable authority cited by the court in support of what was there said; the theory of those decisions being that, while a check is not complete payment, still it is conditional payment until dishonored, and in this sense amounts to such payment as will forestall garnishment. As we see it, however, the instant case does not involve a question of payment by the attorney, neither does it involve a question of an assignment of the attorney's funds to the client; but, as was said in *McIntire* v. *Raskin,* 173 *Ga.* 746, 754 (161 S. E. 363) : "The funds were not those of the drawers, but those of the payee. The purpose of the drawers of this check was to remit these funds to their client." This being the case, even if the Code section as to *payment* by check were rigidly construed, and even if the section providing that a check does not operate as an *assignment* of the fund should in like manner be rigidly construed, these sections would have no proper application where there was no debt to be paid and no equitable title to be assigned, but the deposit was a trust fund actually belonging to the client, and where the purpose of the check was not to pay a debt or make an assignment of the *title,* but merely to relinquish the attorney's legal *custody and con-*

*trol* over the fund to its rightful owner. The attorney giving the order to his client on the fund held by him merely as the agent and custodian for the client as the true owner did nothing but what the law compelled him to do. This being true, after the delivery of the check to the client, the relationship of attorney and client with respect to the fund being functus officio, he had no further right or control over it. He could not legally or rightfully resume the office of attorney for the purpose of controlling the fund. This seems to be the clear and logical inference from *Mc-Intire* v. *Raskin,* supra, where the check had been certified *at the instance of the drawers,* but not delivered. The basis of the rule contained in our statute, that an ordinary check on a general fund of the drawer does not constitute an assignment of the fund, is that such an order merely constitutes a tentative direction to the bank to pay the specified amount to the named payee, and that, since the order might be revoked, the drawing and delivery of the check remains a mere tentative transaction until the check is certified at the instance of the drawer and delivered, or is certified at the instance of the payee, or else is actually paid by the bank. Where, however, the attorney does precisely what the law requires of him, and relinquishes to its true owner a fund of which the attorney was a mere custodian, as in the instant case, there is not only an immediate but a final and irrevocable change in the legal custody and control of the fund. The fact that the *bank,* if acting in good faith and before notice of the true owner's title, would have been protected if it had paid out the fund on a subsequent check drawn by the attorney, has no bearing on the claim of superiority by a *creditor of the payee* garnishing the *attorney.* Thus the rule might be different were the garnishment against the *bank* by a *creditor of the attorney,* provided that the bank received and held the deposit without knowledge of its trust character, for the reason that an outstanding uncertified and unpaid check would not operate to change the status of debtor and creditor existing between the bank and the attorney as an ordinary depositor. See 43 L. R. A. (N. S.) 100, note.

2. While the ruling just made is decisive of the case, we turn to the additional question, which in our opinion is also of itself controlling. This is, whether an indorsement of a check by the payee and its delivery to a third person before the service of gar-

nishment on the drawer would operate to defeat the subsequent garnishment against the drawer. This latter question is now considered independently of the fact that the instant check was an order on the bank for delivery to the client of his own funds. It is well established that "a creditor can not reach by garnishment assets which the debtor himself can not recover from the garnishee; for what one can not recover himself can not, by garnishment, be recovered against him" (*Southern Amusement Co.* v. *Deal*, 15 *Ga. App.* 130, 132 (82 S. E. 765) ; and that "if the defendant himself, suing the garnishee, could not get a judgment against him, then the garnishing plaintiff can not get a judgment against the garnishee." *Singer Sewing Machine Co.* v. *Southern Grocery Co.*, 2 *Ga. App.* 549 (59 S. E. 473) ; and Supreme Court cases cited in two preceding divisions; *Jaques Co.* v. *Carstarphen Warehouse Co.*, 131 *Ga.* 1, 2 (62 S. E. 82). This test of the indebtedness of the garnishee, and of the right of suit against him under the rule stated, is to be applied as of "the time of the service of the summons of garnishment" and subsequently, as provided by the statutes. Code, §§ 46-105, 46-201-46-203, 46-301. If at those times the plaintiff creditor, who stands merely in the shoes of the defendant debtor, could not recover against the garnishee, the garnishee would not be subject to the garnishment.

The rule is settled in this State, even in a case where the mere taking of a negotiable instrument by a creditor from his debtor does not operate as a *payment* of the debt, so as to preclude the creditor from suing the debtor on the original indebtedness, that, "as a condition precedent to a final judgment, [the instrument] must be surrendered to the maker, or accounted for by showing that it is not in any event enforceable against him." This "condition precedent must have been complied with before judgment in [the creditor's] favor could legally be awarded." "He will not be suffered to recover on the original cause of action, unless he can show the note to have been lost, or produces it at the trial to be canceled." *Belmont Farm Co.* v. *Dobbs Hardware Co.*, 124 *Ga.* 827, 828 (53 S. E. 312) ; *Standard Cooperage Co.* v. *O'Neill*, 146 *Ga.* 235, 237-238 (91 S. E. 82) ; *Wilson* v. *McEachern*, 9 *Ga. App.* 584, 586 (71 S. E. 946). There is even authority outside of this State that the mere negotiation of a check by a payee creditor renders it an absolute payment, and

discharges the original indebtedness. 48 C. J. 618, 620, § 52; Gulf Motor Lines v. European Agencies, (La. App.) 155 So. 523. But whether or not this unqualified rule be sound, it is well established that so long as a bill of exchange is outstanding in the hands of a third person, it will be treated as having been accepted in .discharge of the debt for which it was given, so as to bar an action thereon. 48 C. J. 614, 632, §§ 42, 72, and cit. If there is merely an absence of evidence as to whether a negotiable instrument is still owned by the defendant, or has been indorsed or assigned, the debt is not subject to garnishment; and this is true irrespective of whether the garnishment was served prior to or after the maturity of the instrument. 28 C. J. 108, 109, 154, 155, §§ 148, 193, and cit. A fortiori, it would follow that the payee could not have recovered against the drawer, where, as in this case, the undisputed evidence showed that the check was indorsed and delivered by the named payee to a third person, and was thus placed and remained beyond the control and custody of the payee, before the service of the garnishment on the drawer by the creditor of the payee. The payee of the check, which he had indorsed to another, being thus unable to recover a judgment against the drawer either on the check itself or on the original debt, the creditor of the payee, having no greater right, could not succeed in his garnishment. For this additional reason a verdict in the garnishee's favor being not only authorized but demanded by the undisputed evidence, the trial court did not err in denying, on the general and only grounds presented, the plaintiff's motion for new trial.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*