NIMMONS, Judge.
The Florida National Bank at Perry (FNB) appeals from a final judgment declaring the rights of the parties hereto *853 relative to the method utilized by The Citizens Bank of Perry (Citizens) of presenting checks drawn on FNB which checks Citizens’ customers have cashed or deposited in Citizens accounts. The final judgment also awarded damages to Citizens. We reverse.
FNB and Citizens are commercial banks located in Perry, Florida. Each business day, several hundred checks drawn on FNB are deposited in Citizens and several hundred checks drawn on Citizens are deposited in FNB. In 1966, FNB and Citizens informally agreed to a collection process which, although not provided for in Chapters 673 and 674, Florida Statutes (Florida’s version of the Uniform Commercial Code), best suited the needs and collection abilities of each bank. Pursuant to the agreement, each day FNB would separate the Citizens checks it had received for that day and total the amount of the checks. An FNB employee would then bring the bundle of Citizens checks, to Citizens and request payment for the checks. At the same time FNB was following this procedure, Citizens would do the same with the FNB checks it had received during the day. Because of the volume of checks involved, each bank, in the capacity of payor, agreed to forego its right to examine each item. Instead, the banks would examine each item individually after payment and, following examination, would honor the request of the other bank, as payor,[1] to return improper items to the collecting bank. In addition, FNB and Citizens agreed that it would not be necessary for each bank, as payor, to issue its bank draft in settlement for the total amount of checks presented for payment by the collecting bank.[2] Rather, the two banks would “net out” the amounts submitted and issue one cheek to the bank which had presented the higher total amount of checks for the day. The parties were protected from loss by the terms of the agreement.
The two banks operated under that arrangement from 1966 until mid-April 1982. At that time FNB installed a centralized, computerized system for reviewing or proofing its items which enabled FNB to route its items through its system more efficiently and more economically. All items from all other banking institutions would be deposited or cashed each day at FNB and sent in a bundle to a computer center in Jacksonville for sorting and proofing. Each item .would then be appropriately credited to FNB’s account at its correspondent bank in Jacksonville.[3] Under this new system, FNB would no longer sort out checks, including Citizens, prior to presentment through its Jacksonville clearinghouse. FNB, therefore, terminated its informal reciprocal arrangement for the exchange of checks which it had had with Citizens.
Accordingly, on March 17, 1982, FNB informed Citizens that, effective April 16, 1982, it would be presenting items through a correspondent bank in Jacksonville, and FNB suggested that Citizens might wish to make presentment in the same way.
Notwithstanding FNB’s advice concerning its termination of the agreement,[4] Citizens apparently preferred to continue the daily practice of physically carrying the bundle of FNB checks to the latter’s bank in Perry. On April 17, 1982, Mr. Sons, Citizens’ vice-president and cashier, personally carried a two-inch stack of checks to FNB. Mr. Jones, FNB’s cashier, reminded Sons that FNB was no longer exchanging checks with Citizens pursuant to the former arrangement as the latter had been discontinued by FNB. However, Jones advised Sons that Citizens could present them *854 over-the-counter. To Sons’ inquiry as to what that would entail, Jones advised him that each item would have to be exhibited individually and endorsed as a receipt for payment. Alternatively, Jones told Sons that Citizens could deposit the checks in the latter’s account at FNB.[5] Apparently, Sons did not wish to deposit the checks in Citizens’ account at FNB, and when he learned that, in order to present over-the-counter, he would be expected to exhibit and endorse each check as a receipt for payment, he departed the bank with the checks.
At some point in time — -it is unclear from the record when it was first mentioned— FNB advised Citizens that it would have to charge a collection fee of $2.00 per item in order to accommodate Citizens’ presentment of bundles of checks for payment over-the-counter. We do know from the trial testimony that no mention was made on April 17 when the over-the-counter presentment was attempted. The collection' fee was apparently first mentioned in a subsequent letter from FNB to Citizens.
After the unsuccessful efforts to present over-the-counter on April 17, Citizens chose to present the FNB items through its correspondent bank in Jacksonville. Citizens did so from April 1982 through May 1983 at an approximate cost of four cents per item. In May 1983 Citizens decided to present its items through a Tallahassee correspondent bank which, although costing Citizens five and one-half cents per item, was less expensive in that the Tallahassee correspondent bank was able to give next-day credit on roughly 90% of the funds whereas the Jacksonville correspondent bank gave no credit on any of the funds until two days after presentment.
Citizens filed this action seeking a declaratory judgment that it was entitled, under the Uniform Commercial Code, to make over-the-counter presentment in the manner it attempted and that the conditions imposed for such presentment by FNB amounted to an improper refusal of the presentment. Citizens also sought damages by reason of charges and the loss of use of funds resulting from having to resort to another method of presentment.
After a non-jury trial, the trial court found that presentment at FNB’s banking headquarters in Perry was a proper place for presentment of the subject checks and that the conditions imposed by FNB for the over-the-counter presentment constituted a denial of Citizens’ right to make such presentment. The trial court also awarded damages to Citizens for the per-item fees charged Citizens by the Jacksonville and Tallahassee correspondent banks for processing or returning FNB checks. The court, however, denied recovery of damages attributable to Citizens’ claimed loss of use of funds. Citizens cross appeals the denial of this loss of use element of damages.
We disagree with the trial court that FNB refused presentment of the checks on April 17. FNB had decided to move its bank collection procedures into the 20th century. Citizens, on the other hand, wished to perpetuate its old system for collection which it had operated by agreement with FNB for sixteen years. As one writer has noted:
Although the UCC does not prohibit over-the-counter presentment, this method is rare in the realm of bulk check processing. The UCC gives express approval to the two modes of presentment common to the bank collection system: presentment by mail in the case of transit items or direct routing [footnote citation to UCC § 3-504(2)(a), adopted in Florida as Section 673.504(2)(a) ] and presentment through the clearinghouse in the case of local items [footnote cita *855 tion to UCC § 3-504(2)(b), adopted in Florida as Section 673.504(2)(b) ].
Clark, The Law of Bank Deposits, Collections and Credit Cards, Section 1.3(1) (rev. edition 1981). We do not disagree with the trial court’s conclusion that Citizens was entitled to make over-the-counter presentment of the FNB checks. See Capital City First National Bank v. Lewis State Bank, 341 So.2d 1025, 1027 (Fla. 1st DCA 1977); Section 674.204, Florida Statutes (1981). However, where a collecting bank chooses that method of presentment for payment of its daily accumulations in bulk, it will have to be prepared to satisfy conditions reasonably imposed by the payor bank.
Section 673.505, Florida Statutes (1981), provides:
(1) The party to whom presentment is made may without dishonor require:
(a) Exhibition of the instrument; and
(b) Reasonable identification of the person making presentment and evidence of his authority to make it if made for another; and
(c) That the instrument be produced for acceptance or payment at a place specified in it, or if there be none at any place reasonable in the circumstances; and
(d) A signed receipt on the instrument for any partial or full payment and its surrender upon full payment.
(2) failure to comply with any such requirement invalidates the presentment but the person presenting has a reasonable time in which to comply and the time for acceptance or payment runs from the time of compliance.
FNB was acting within its rights to expect individual exhibition of the cheeks presented over-the-counter in bulk in order to determine that each check was, in fact, an item upon which payment should properly be made. See Peabody v. Citizens State Bank, 98 Minn. 302, 108 N.W. 272 (1906) (individual exhibition of each item reasonably required where a number of checks were presented by a bank over the counter to the payor bank). We are also of the view that FNB was within its rights to require, as a condition to Citizens’ over-the-counter presentment, that Mr. Sons receipt each of the checks.
As earlier noted, there was apparently no mention made of a per item collection charge at the time of the April 17 attempted presentment. Even assuming that we were to hold that such collection charge could not reasonably be imposed by FNB, the fact is that there is no evidence that such a charge was a factor in the failure of the attempted presentment on April 17. In fact, Citizens, although purporting to make an over-the-counter presentment, failed to make a valid presentment by reason of its refusal to satisfy the reasonable requirements imposed by FNB.
We also reject Citizens’ argument that FNB was required, upon the over-the-counter presentment of the bundle of checks, to provisionally pay Citizens without requiring Sons to exhibit each check to determine at that time whether the checks were properly payable by FNB. We do not believe that where Citizens, as collecting bank, insists upon an in-bulk over-the-counter presentment that it can require immediate provisional payment and thus eliminate FNB’s right to require individual exhibition of the items.[6]
Citizens never made a valid presentment, and the court erred in awarding damages to Citizens. Citizens never having made a valid presentment and therefore not being entitled to an award of damages, we need not treat the issue raised by Citizens in its cross appeal pertaining to the trial court’s denial of its loss of use element of damages.
REVERSED.
THOMPSON and BARFIELD, JJ., concur.

. “Payor bank” means a bank by which an item is payable as drawn or accepted. Section 674.-105(2), Florida Statutes (1981).

. "Collecting bank” means any bank handling the item for collection except the payor bank. Section 674.105(4), Florida Statutes (1981).

. A "correspondent bank" is a bank which has a customer or account relationship with another bank.

. Understandably, no assertion has been made by Citizens that FNB was not entitled to terminate their previous arrangement for exchanging checks.

. This version of what occurred on April 17, 1982, is based upon Mr. Jones’ testimony. Mr. Sons, the only other person to testify as to what occurred on April 17, simply testified that Jones arbitrarily refused his over-the-counter presentment. The language of the final judgment is such that it is apparent that the trial court accepted Mr. Jones’ testimony given the fact that the judgment ruled against FNB on the basis of the conditions for presentment imposed by FNB as opposed to a finding that FNB simply refused the presentment.

. Relative to provisional vs. final payment or settlement, see Section 674.104(l)(j), 674.213 and UCC Comments.