955 So.2d 1231 (2007)
FIRST AMERICAN HOLDINGS, INC., a Florida corporation; and First American Banking Corporation, Appellants,
v.
PRECLUDE, INC., a Florida corporation; and Arnold, Matheny & Eagan, P.A., Appellees.
No. 2D06-317.
District Court of Appeal of Florida, Second District.
May 11, 2007.
*1232 Geoffrey Todd Hodges of G.T. Hodges, P.A., Lutz, for Appellants.
John Calhoun Bales and Kimberly S. Mello of John Bales Attorneys, St. Petersburg, for Appellee Arnold, Matheny & Eagan, P.A.
No appearance for Appellee Preclude, Inc.
DAVIS, Judge.
First American Holdings, Inc., and First American Banking Corporation (collectively, "the Bank") challenge the final judgment dissolving a writ of garnishment. The issue presented here is whether an attorney who is holding a client's funds in the attorney's trust account must, upon receipt of a writ of garnishment, stop payment on a check drawn on those funds and delivered to the payee client. While we certify the issue as a matter of great public importance, we hold that an attorney does have a duty to stop payment on such a check. Accordingly, we reverse the trial court order dissolving the writ.
These proceedings began when the Bank sought to collect on a $26,000 judgment it had obtained against Preclude, Inc. In an unrelated lawsuit, Preclude, which is represented by the law firm of Arnold, Matheny & Eagan, P.A. ("AME"), had obtained a $50,000 settlement from Greenleaf Products, Inc., which Greenleaf had agreed to pay into AME's trust account pursuant to the terms of the settlement. The details of these lawsuits are not relevant to this action.
On June 19, 2002, the Bank served AME with a writ of garnishment seeking to collect its $26,000 judgment from the $50,000 Greenleaf settlement. However, because AME had not yet received the settlement *1233 payment from Greenleaf, AME answered that while Greenleaf was indebted to Preclude, AME did not currently hold any funds belonging to Preclude. Two days later, on June 21, 2002, AME received the proceeds of the settlement and deposited them into its trust account. On that same date, AME issued two trust account checks on those funds. One, in the amount of $26,736.24, was made payable to AME's operating account for attorneys' fees. The other, for the balance of the funds, was made payable to Preclude. The check to Preclude was hand delivered to the president of Preclude on that same day.
Four days later, on June 25, 2002, the Bank served a second writ of garnishment on AME, again attempting to collect on the judgment against Preclude. Once again, AME answered the writ by denying that it was in possession or control of any funds that were the property of Preclude. Upon subsequent review of the records, however, the Bank determined that as of June 25, 2002, the check issued to Preclude had not yet been presented for payment to AME's bank. In fact, it was not presented for payment until June 28, 2002, after AME had answered the writ of garnishment denying possession of the funds.[1]
The Bank filed this action seeking to hold AME responsible for the payment of the funds represented by the trust account check issued to Preclude, arguing that AME's answer had not been truthful. The Bank argued that since the check had not yet cleared the bank, the funds were still in AME's trust account at the time of the service of the second writ and that AME had a duty to issue a stop payment order for the check and to preserve the funds for the Bank's collection. AME argued that such a duty only applied to banks and that since it was not a bank, it did not have such a duty. It further argued that since the check was in the personal possession of Preclude, AME did not have possession or control of the funds at the time that the second writ was served.
The trial court agreed with AME. Basing its ruling on Hiatt v. Edwards, 52 Ga.App. 152, 182 S.E. 634 (1935), the trial court granted AME's motion for summary judgment and entered final judgment dissolving the second writ of garnishment. The Bank now appeals that judgment.
The Florida garnishment statute requires that upon being served with a writ of garnishment, the garnishee must serve an answer stating whether it is indebted to the defendant and what sum the garnishee "has in his or her possession or control at the time" that the writ is served. § 77.04, Fla. Stat. (2002). Additionally, the law makes the garnishee liable for any amount that it holds but fails to properly report in the answer or fails to retain for the benefit of the garnishor. § 77.06. As a general rule, funds held by an attorney in his trust account are subject to garnishment. Robert C. Malt & Co. v. Colvin, 419 So.2d 745 (Fla. 4th DCA 1982); Wilkerson v. Olcott, 212 So.2d 119 (Fla. 4th DCA 1968). However, the issue we must resolve is whether funds held in the attorney's trust account are still considered to be in the "possession or control" of the attorney at the time the attorney receives the writ of garnishment if the attorney has previously drawn a check on those funds and has personally delivered it to his client but the client has not yet presented the check for payment.
Florida courts have determined that a bank has a duty to retain funds subject to garnishment in that situation. See Gelco Corp. v. United Nat'l Bank, 569 So.2d 502 (Fla. 3d DCA 1990). In Gelco, the Third *1234 District noted that "`[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment. . . .'" Id. at 503 (alteration in original) (quoting § 673.409(1), Fla. Stat. (1989)). The court then concluded, "The fact that a check has been written and delivered to the payee prior to service of the writ of garnishment is not a basis for relief from the writ." Id. The court specifically rejected the argument that upon receipt of the check by the payee, the payor effectively assigned the funds still in the payor's account pending the payment of the check. Thus, upon receipt of a writ of garnishment, a bank must place a stop payment on the account to protect the funds in the account for the benefit of the garnishor even if a check drawn on the account has already been delivered to the payee. The question we must resolve is whether an attorney is held to the same duty with regard to the funds held in the attorney's trust account.
While the courts of several states have determined that a nonbank garnishee has no duty to stop payment on a previously delivered check that has yet to clear the garnishee's bank, see Cent. Sec. & Alarm Co. v. Mehler, 125 N.M. 438, 963 P.2d 515 (1998); Schwerdt, Grace & Niemackl v. Speedway Festivals, Inc., 7 Kan.App.2d 40, 637 P.2d 477 (1981), the only case in Florida that addresses this issue suggests that Florida does place such a duty on the nonbank garnishee, see Michael Acri Boxing Promotions, Inc. v. Miles, 758 So.2d 704 (Fla. 4th DCA 2000). Without stating any of the facts or describing the issue, the Fourth District simply affirmed the trial court's ruling and cited three cases. One of the cases cited is Gelco, 569 So.2d 502, which deals with a bank garnishee. However, the special concurrence in Michael Acri does give some insight into the issue involved and suggests that Florida does impose a duty on a nonbank garnishee to retain funds held pending payment of outstanding checks. "This and other Florida courts apparently impose a duty on a garnishee-maker of a check that was issued in discharge of an obligation to a judgment debtor to stop payment on the check when served with a writ of garnishment." 758 So.2d at 705 (Stone, J., concurring). The concurrence goes on to suggest that in the concurring author's opinion, the position of the other states that does not place such a duty on the nonbank garnishee is the "better policy." Id. The implication is that Florida does extend the duty to stop payment on checks to both bank and nonbank garnishees.
A review of the out-of-state opinions that distinguish between bank and nonbank garnishees suggests that the underlying concern is the liability of the nonbank garnishee to innocent third parties who might have accepted the check from the payee in exchange for value before service of the writ of garnishment. If the nonbank garnishee stops payment on the check, it might subject itself to liability to an innocent third party. However, the Florida garnishment law addresses this concern. Section 77.06(3) provides that the garnishee shall not be held liable to the defendant or "to any other person claiming the same or any interest therein or claiming to have sustained damage" due to the garnishee's retention, in good faith, of the funds until the matter is properly resolved by the garnishment procedures.
Similarly, the language of section 673.409(1), Florida Statutes (2002), stating that the check does not create an assignment of the funds, supports the proposition that the garnishee maintains "possession or control" of the funds until the check is paid by the garnishee's bank and that the nonbank garnishee must report *1235 and retain the funds once served with a writ of garnishment.
The final issue, then, is whether there is any reason to treat attorneys' trust accounts differently from bank and nonbank garnishees, both of which are required to retain the funds for the benefit of the garnishor. AME suggests that an attorney's trust account should be treated differently because unlike a bank, an attorney is not a neutral third party in a garnishment proceeding; rather, an attorney has a professional duty to protect his or her client's interests, putting the attorney in a potentially precarious position if he or she stops payment on a check contrary to the client's interests.
This argument is premised on the reasoning that since the funds held by the attorney in the trust account are, in fact, the client's, the attorney has a fiduciary duty to pay those funds only at the direction of the client. Accordingly, retaining the funds for the benefit of the client's creditor would violate that fiduciary duty. However, this argument leads to the erroneous conclusion that the attorney's trust account should not be subject to garnishment. See Robert C. Malt & Co., 419 So.2d 745. To exempt trust accounts from the garnishment provisions that apply to bank and nonbank garnishees would result in allowing the client a protection in the trust account that he would not have if the funds were in his own account. The garnishment statutes do not provide for such a protection, and we decline the invitation to create the same.
Our conclusion is further supported by rule 5-1.1 of the Rules Regulating the Florida Bar, which sets forth an attorney's obligations regarding trust account funds. Although subparagraphs (a) and (b) recognize that a client's funds held in an attorney's trust account are held in "trust" and direct that such funds be handled pursuant to the instruction of the client, subparagraph (e) provides that where a third party claims an interest in the client's funds, the attorney must promptly notify the client or third party of the receipt of such property. This requirement is consistent with our interpretation of the garnishment statute. Likewise, subsection (f) supports our decision because it directs that if a dispute arises over the ownership of the funds, the attorney is to hold the funds until the dispute is resolved. Since the garnishment statute specifically states that the execution and delivery of a check does not transfer control of the funds to the payee until the payee presents the check for payment, it is clear that an attorney maintains control of the funds in his or her trust account until presentment and, accordingly, must comply with the garnishment statute as to those funds in his or her control.
Based on our review of the statutory and decisional law, we conclude that Florida does impose on both bank and nonbank garnishees the duty to retain funds held by the garnishee even after a check on those funds has been drawn by the garnishee and delivered to the payee. Furthermore, we can conceive of no reason to create a third category for attorneys' trust accounts. Accordingly, we conclude that the attorney garnishee has the same duty as other nonbank garnishees, even in matters related to trust accounts. We therefore reverse the trial court's order dissolving the writ of garnishment and remand for further proceedings consistent with this opinion.
However, we recognize that this is a case of first impression that addresses a question of great importance to attorneys and their clients. As such, we certify the following question as one of great public importance:

*1236 DOES AN ATTORNEY GARNISHEE HAVE A DUTY TO ISSUE A STOP PAYMENT ORDER FOR A CHECK DRAWN ON HIS OR HER TRUST ACCOUNT AND DELIVERED TO THE PAYEE PRIOR TO THE RECEIPT OF A WRIT OF GARNISHMENT IF THE SERVICE OF THAT WRIT OCCURS PRIOR TO THE PRESENTMENT OF THAT CHECK FOR PAYMENT TO THE ATTORNEY'S BANK?
Reversed and remanded; question certified.
SILBERMAN and VILLANTI, JJ., Concur.
NOTES
[1] The funds paid to AME's operating account are not subject to this appeal.