982 So.2d 628 (2008)
ARNOLD, MATHENY AND EAGAN, P.A., Petitioner,
v.
FIRST AMERICAN HOLDINGS, INC., etc., et al., Respondents.
No. SC07-1136.
Supreme Court of Florida.
May 1, 2008.
*630 John Calhoun Bales and John L. Mulvihill of John Bales Attorneys, St. Petersburg, FL, and Barbara A. Eagan of Broussard, Cullen, DeGailler, and Eagan, P.A., Orlando, FL, for Petitioner.
Geoffrey Todd Hodges of G.T. Hodges, P.A., Lutz, FL, for Respondent.
PARIENTE, J.
The issue before us involves the interpretation of Florida's garnishment statute and the obligations it imposes on third parties, including attorneys, who are served with writs of garnishment. In its decision in First American Holdings, Inc. v. Preclude, Inc., 955 So.2d 1231 (Fla. 2d DCA 2007), the Second District Court of Appeal ruled upon the following question, which the court certified to be of great public importance:
DOES AN ATTORNEY GARNISHEE HAVE A DUTY TO ISSUE A STOP PAYMENT ORDER FOR A CHECK DRAWN ON HIS OR HER TRUST ACCOUNT AND DELIVERED TO THE PAYEE PRIOR TO THE RECEIPT OF A WRIT OF GARNISHMENT IF THE SERVICE OF THAT WRIT OCCURS PRIOR TO THE PRESENTMENT OF THAT CHECK FOR PAYMENT TO THE ATTORNEY'S BANK?
Id. at 1236. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The Second District broadly concluded that "Florida does impose on both bank and nonbank garnishees the duty to retain funds held by the garnishee even after a check on those funds has been drawn by the garnishee and delivered to the payee." First American, 955 So.2d at 1235. In so holding, the Second District adopted a rule of law that applied equally to attorneys and other non-bank garnishees. Because we agree with this analysis, we answer the certified question in the affirmative and *631 approve the decision of the Second District.

FACTUAL AND PROCEDURAL BACKGROUND
The law firm of Arnold, Matheny and Eagan, P.A. (AME) represented Preclude, Inc., in a lawsuit against Greenleaf Products, Inc., which resulted in AME obtaining a $50,000 settlement from Greenleaf for its client Preclude. The settlement reached on June 14, 2002, required Greenleaf to pay these funds into AME's trust account.
Prior to the time of the settlement between Greenleaf and Preclude, First American Holdings, Inc. (First American), sought to collect on a $26,000 judgment it had previously obtained in unrelated proceedings against Preclude. The precise details of both underlying lawsuits are not relevant to the issue before us.
On June 19, 2002, First American served AME with a writ of garnishment seeking to collect its $26,000 judgment from the Greenleaf settlement. At that time, AME had not yet received the settlement funds and answered the writ by stating that, although Greenleaf was indebted to Preclude, AME did not currently hold any funds belonging to Preclude. Two days later, on June 21, 2002, AME received the proceeds of the settlement and deposited the funds into its trust account. On that same date, AME issued two trust account checks. AME made the first check payable to its operating account in the amount of $26,736.24 for attorneys' fees and costs. That check is not in dispute. The other check for the balance of the funds was made payable to Preclude, which AME hand delivered to Preclude that same day.
Four days later, on June 25, 2002, First American served a second writ of garnishment on AME, again attempting to collect on the judgment against Preclude. Once again, AME answered the writ by denying that it was in possession or control of any funds that were the property of Preclude. Upon subsequent review of the records, however, First American determined that as of June 25, 2002, the funds represented by the check were still in AME's trust account and that the check was not presented to AME's bank for payment until June 28, 2002, several days after AME had answered the writ of garnishment denying possession of the funds.
First American then filed an action seeking to hold AME responsible for the funds represented by the trust account check issued to Preclude. First American contended that AME was liable because AME had possession and control of the funds until the check cleared. AME defended its actions by arguing that once the check was delivered to Preclude on June 21, 2002, it no longer had possession or control and therefore had no duty to stop payment. Alternatively, AME argued that any stop payment duty applied only to banks and thus was not applicable to AME as a non-bank garnishee. The trial court ruled in favor of AME, granting its motion for summary judgment and dissolving the second garnishment writ. First American, 955 So.2d at 1232-33.
First American appealed to the Second District. As stated previously, the court specifically rejected AME's argument that attorneys and their trust account checks should be treated differently for purposes of the garnishment law. Id. at 1235. Thus, the Second District reversed the trial courts ruling. Id. Consequently, AME filed a notice to invoke this Courts discretionary jurisdiction based on the certified question, requesting this Court to review the Second Districts decision.

ANALYSIS
The question in this case, which is one of first impression for this Court, is *632 whether an attorney must issue a stop payment order on a check drawn from an attorney trust account and delivered to a client before the attorney is served with a garnishment writ, if the writ is received before the check has been presented for payment to the attorney's bank. Because the issue requires this Court to interpret the statutory provisions of Florida garnishment law, we apply a de novo standard of review. See Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 194 (Fla.2007).
In answering the certified question, we first provide an overview of the Florida garnishment statute, sections 77.01-77.28, Florida Statutes (2002). Next, we discuss the proper interpretation of "possession or control" as those terms are used in section 77.01. We then analyze whether the obligations of the garnishment statute apply equally to bank and non-bank garnishees. Next, we determine whether a different rule of law should apply to attorney trust accounts, which also requires us to review the obligations of attorneys toward their clients. Finally, we apply our analysis to the facts of this case.

A. The Garnishment Statute
Garnishment is a creature of statute, unknown at common law. Robinson v. Robinson, 154 Fla. 464, 18 So.2d 29, 31 (1944). It is authorized as a method of collecting a monetary judgment against a defendant. In Florida, the right to garnishment is created under section 77.01, which states in relevant part:
Every person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person or any debt not evidenced by a negotiable instrument that will become due absolutely through the passage of time only to the defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person.

(Emphasis added.)
Once a garnishee receives the writ, the garnishee must answer the plaintiff within twenty days and state
whether he or she is indebted to defendant at the time of the answer, or was indebted at the time of service of the writ, or at any time between such times; and in what sum and what tangible or intangible personal property of defendant the garnishee has in his or her possession or control at the time of his or her answer, or had at the time of the service of the writ, or at any time between such times; and whether the garnishee knows of any other person indebted to defendant, or who may have any of the property of defendant in his or her possession or control.
§ 77.04, Fla. Stat. (2002). In addition to filing the answer, the garnishee is required to "retain . . . any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee" until disposition or dissolution of the writ. § 77.06(2), Fla. Stat. (2002). If a garnishee fails to retain the property of the defendant or otherwise comply with the writ, the plaintiff may obtain a monetary judgment against the garnishee. See § 77.081(1)-(2), Fla. Stat. (2002).
On the other hand, the Legislature, in recognizing the risk of liability for a garnishee, has provided immunity for any garnishee acting in good faith. Section 77.06(3), Florida Statutes (2002), states:
In any case where a garnishee in good faith is in doubt as to whether any indebtedness or property is required by law to be included in the garnishee's answer or retained by it, the garnishee *633 may include and retain the same, subject to the provisions of s. 77.19[[1]] and subject to disposition as provided in this chapter, and in such case the garnishee shall not be liable for so doing to the defendant or to any other person claiming the same or any interest therein or claiming to have sustained damage on account thereof.
(Emphasis added.) This section acts as a shield from liability for garnishees who have acted in good faith in accordance with their statutory responsibilities. Finally, Florida garnishment law provides for reimbursement of a garnishees attorneys fees, costs and expenses associated with complying with a garnishment writ. See § 77.28, Fla. Stat. (2002).

B. Statutory Construction
With this overview of Florida garnishment law in mind, we now discuss the interpretation of the garnishment statute. The actual issue before us is a narrow one concerning the obligations the statute imposes on attorneys under a specific set of circumstances; that is, where a trust account check has been written and delivered to the payee prior to receipt of the garnishment writ but before presentment of the check to the payor's bank. The specific determination we must make is whether an attorney is in "possession or control" of funds as those terms are used in section 77.01, when a check has been written and delivered to the client but not yet been presented to the attorney's bank for payment.
This Court must construe the statute in accordance with legislative intent by looking primarily at the statutory language. Cason v. Fla. Dep't of Mgmt. Servs., 944 So.2d 306, 312 (Fla.2006). If the language is clear and unambiguous, then this Court has no further reason to apply the rules of statutory construction. Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006). Yet, if the language is unclear or ambiguous, or otherwise must be interpreted, then this Court applies the rules of statutory construction to discern legislative intent. Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006).
We focus on the statutory provision that requires that a garnishee "report" and "retain" any property that is in its "possession or control" at the time the writ is served because there is no express duty in the garnishment statute requiring the garnishee to issue a stop payment order. See § 77.06(2), Fla. Stat. ("The garnishee shall report in its answer and retain . . . any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee."). Therefore, in answering the certified question, it is necessary to determine the meaning of the terms "possession or control."
Because "possession or control" is not defined in the garnishment statute, canons of statutory construction require that the term be given its plain and ordinary meaning which can be ascertained by reference to dictionary definitions. See Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000). According to Black's Law Dictionary 1201 (8th ed.2004), "possession" is "[t]he fact of having or holding property in one's power; the exercise of dominion over property." "Control" is defined as "to exercise power or influence over." Id. at 353.
*634 In the case of funds in a bank account, the payee obtains possession and control once the funds are physically present in its account. See Nicholas v. Ross, 721 So.2d 1241, 1243 (Fla. 4th DCA 1998) (appellant obtained possession of funds from wire transfer once the funds were deposited into her account). As for the payor, if a check has not been written, the duty to report and retain is easily fulfilled because the funds are still physically present in the account and the payor continues to have possession and control. However, simply because a check has been issued does not necessarily result in the payor losing possession and control of the funds.
Considering that a check is a negotiable instrument, the most relevant provisions governing the status of the funds represented by an issued check, specifically as to who is in "possession" or "control," are those found within the Uniform Commercial Code (U.C.C.). The U.C.C. has been adopted by statute in Florida in chapters 671 through 680, Florida Statutes, and chapter 673 pertains to negotiable instruments, such as checks. See, e.g., § 673.1041(6), Fla. Stat. (2002).
Section 673.4081, Florida Statutes (2002),[2] provides that a "check or other draft does not of itself operate as an assignment of funds in the hands of the drawee which are available for its payment." The Third District Court of Appeal in Gelco Corp. v. United National Bank, 569 So.2d 502 (Fla. 3d DCA 1990), relied on this provision in specifically rejecting the argument that upon receipt of the check by the payee, the payor effectively assigned the funds still in the payor's account pending the payment of the check. Id. at 503-04.
Further, regarding whether the funds remain in the payor's account and hence in the payor's possession up until presentment, section 673.5011(1)(a), Florida Statutes (2002), defines presentment as "a demand made by or on behalf of a person entitled to enforce an instrument: (a) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank." Presentment has been construed as the point in time where the payee or the payee's bank presents the check to the payor's bank for payment. See Florida Nat'l Bank at Perry v. Citizens Bank of Perry, 474 So.2d 852, 853 (Fla. 1st DCA 1985) (using the term "presentment" in defining the exchange between banks where the collecting bank would bring checks to the payor bank and request payment for the checks). Importantly, after the check is issued to the payee but before presentment of the check to the payor's bank, the funds represented by the check remain in the payor's account. It is not until presentment that issuance of a check constitutes full and absolute payment. See Henry J. Bailey & Richard B. Hagedorn, Brady on Bank Checks § 4.6 (7th ed. 1992) ("Since delivery of an ordinary, uncertified check is only conditional payment, dependent on the check being honored upon presentment, the check vests no title or interest in the payee as to funds on deposit in the drawer's bank account and the check is deemed revocable by the drawer until it is paid.").
Other indications of possession and control are found in chapter 674, Florida Statutes (2002), which pertains to bank deposits and collections. Specifically, section 674.403(1), Florida Statutes (2002), deals *635 with the "customer's right to stop payment" and provides in part:
A customer or any person authorized to draw on the account if there is more than one person may stop payment of any item drawn on the customer's account or close the account by a written order to the bank describing the item or account with certainty received by an officer of the bank during a banking day and at a time and in a manner that affords the bank a reasonable opportunity to act on it before any action by the bank with respect to the item described in s. 674.303.
Thus, a payor of a check may issue a stop payment order after the check has been written in an attempt to prevent the check from being paid and the funds from being transferred to the payee. This "right to stop payment" is strongly indicative of the "possession or control" one has over funds in an account. In other words, we would be hard pressed to deny that a payor was still in control over funds in his or her account if the payor could actually take steps to stop payment of the check.
As to the steps for requesting a stop payment order, we recognize that various banking institutions may not be uniform regarding the requirements for issuance of a stop payment order or even what constitutes a reasonable amount of time for the issuance. Therefore, the focus in an individual case may be on whether the garnishee both has the ability to issue a stop payment order and takes reasonable steps to do so after the time the writ is served.[3]
Of course, if a check has not yet been written, the duty to retain is easily fulfilled. However, even if the check has been written and delivered, section 674.403(1) provides the owner of the account with the right to stop payment on the check if the bank is afforded a "reasonable opportunity to act." As previously stated, it is not until the check has been presented for payment to the payor's bank that the payor ceases to have possession or control of the funds represented by the check. Until that point, a payor may issue a stop payment order on the check, transfer the funds to another account, or even liquidate the bank account. In essence, possession and control reside with either the payor or the payee and, until the payor loses the ability to control the funds in the account, the payee has not yet obtained possession or control of the funds.
Construing the provisions of the garnishment statute together with the related provisions of Florida's U.C.C., specifically sections 674.403 and 673.4081, we hold that funds remain in the garnishee's possession and control, even though a check has been written and delivered to the payee, if the check has not been presented for payment.[4] Accordingly, we conclude that the statute imposes a duty on garnishees to issue a stop payment order on a check that has not yet been presented for payment if a garnishee has the ability to do so.[5]

*636 C. Bank and Non-Bank Garnishees
Now that we have concluded there is a general duty to stop payment if the garnishee has the ability to do so, we next discuss whether there is any distinction between bank and non-bank garnishees. In Gelco, the Third District, in reliance on the statutory provision that writing a check in and of itself does not operate as an assignment of funds, held that "once a bank account has been garnished, the bank is obligated to retain funds of the depositor in obedience to the writ," even when a check has been delivered to a payee before the writ was served. 569 So.2d at 503 (quoting Kipnis v. Taub, 286 So.2d 271, 272 (Fla. 3d DCA 1973)).
We note that although Gelco specifically dealt with the duties of a garnished bank, the garnishment statute does not distinguish between bank and non-bank garnishees. In fact, in 1985, the Legislature repealed a portion of the statute that required only banks or other financial institutions to retain property in their possession or control when served with a writ of garnishment. Ch. 85-272, § 2, Laws of Fla.[6] Thus, it appears that the Legislature intended for the duties imposed on bank garnishees to extend to non-bank garnishees as well.
We are aware that case law from some other states distinguishes between bank and non-bank garnishees or holds that garnishees as a whole have no duty to stop payment, but we have found no basis in our statutes for making a similar distinction.[7] Several of those courts were concerned *637 with the risk of liability for a non-bank garnishee if the garnishee stopped payment on a check that the debtor had negotiated to a holder in due course.[8] However, in Florida, our statutory scheme protects against liability for a garnishee who acts in good faith. See § 77.06(3), Fla. Stat. Other courts appear to base their holdings on the fact that a check, as a promise of payment, is sufficient to place the funds out of garnishment's reach.[9] Once again, our statutory scheme addresses and rejects this rationale by specifically providing that issuance of a check does not operate as an assignment of funds. See § 673.4081, Fla. Stat.
We recognize that arguments have been made that not imposing a duty to stop payment on a non-bank garnishee may be the preferable policy. As Judge Stone expressed in his concurrence in Michael Acri Boxing Promotions, Inc. v. Miles, 758 So.2d 704, 705 (Fla. 4th DCA 2000), "[t]he better policy, in my judgment, absent fraud, is that followed in those states holding that, upon service of a writ of garnishment, a non-bank garnishee does not have a duty to stop payment on checks that have been issued and delivered to discharge a debt." Yet, when interpreting a statute, policy preferences are within the purview of the Legislature and the Court does not interfere with that authority as long as the statute does not violate any constitutional rights or principles. See Tillman v. State, 934 So.2d 1263, 1270 (Fla.2006) ("[I]t is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute.") (quoting State v. Rife, 789 So.2d 288, 292 (Fla.2001)). Accordingly, we defer to the Florida Legislature on this matter of policy. Because the garnishment statute does not distinguish between the obligations of bank and non-bank garnishees, we conclude that there is no reason to recognize such a distinction here.

D. Attorney Trust Accounts
Having concluded that the statute does not support creating a distinction for non-bank garnishees, we next address AME's argument that attorneys should be *638 exempt from any stop payment duty because of the nature of attorney trust account checks and the Rules Regulating the Florida Bar. We are unable to find any statutory basis for making this distinction. First, the garnishment statute does not address attorney trust accounts. Second, we note that the Legislature elsewhere in the Florida Statutes has chosen to exempt several funds from garnishment, including the cash surrender value of life insurance, see § 222.14, Fla. Stat. (2007); disability income benefits, see § 222.18, Fla. Stat. (2007); firefighters pension benefits, see § 175.241, Fla. Stat. (2007); and veterans' benefits, see § 744.626, Fla. Stat. (2007). However, the Legislature has not created an exemption for attorney trust accounts.
We also reject AME's attempts to analogize attorney trust account checks to both certified and cashier's checks, which are immediately negotiable.[10] A certified check is a "check accepted by the bank on which it is drawn." § 673.4091(4), Fla. Stat. (2002); see also Black's Law Dictionary 252 (defining certified check as "[a] depositor's check drawn on a bank that guarantees the availability of funds for the check"). A cashier's check is "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." § 673.1041(7), Fla. Stat. (2002); see also Black's Law Dictionary 252 (defining cashier's check as "[a] check drawn by a bank on itself, payable to another person, and evidencing the payee's authorization to receive from the bank the amount of money represented by the check"). A bank is subject to severe penalties for wrongfully stopping payment on a cashier's or certified check. See § 673.4111(2), Fla. Stat. (2002).[11] A bank may honor the check for at least the ninety days following the date of a cashier's check or the date of acceptance of a certified check. See § 673.3121(2), Fla. Stat. (2002).[12] Only after this time has expired may the bank pay the check to someone other than the original payee. See id.[13] Conversely, a stop payment order can be executed on a personal check on the same day. See § 674.403(1), Fla. Stat. (stating that a stop payment order must be "received by an *639 officer of the bank during a banking day and at a time and in a manner that affords the bank a reasonable opportunity to act on it").
As evidenced by the procedures involved in stopping payment, the difference between the two categories of checks is a critical one because an attorney trust account check is simply not addressed by any of these statutory provisions. Further, a trust account check lacks the guarantee inherent in a certified or cashier's check that the funds represented by the check are available. See Hudgins v. Fla. Fed. Sav. & Loan Ass'n, 399 So.2d 990, 991-92 (Fla. 5th DCA 1981) ("Tender of a personal check is not the equivalent of cash or a certified check. The delivery of a personal check is at best `conditional' payment because whether or not it is drawn on a trust account or escrow account, it is not `finally paid' until the conclusion of the `settlement' process and in the interim, the account may fluctuate in amount, it may be garnished, set off by the Bank, or the drawer may stop payment on the check.") (emphasis added) (footnotes omitted). Because of the salient differences between attorney trust account checks and the guaranteed funds that are represented by cashier's and certified checks, we reject AME's assertion that the two categories of checks should be treated similarly.
Certainly, we recognize that through the Rules Regulating Trust Accounts, as contained in Chapter 5 of the Rules Regulating the Florida Bar, every effort is made to ensure the integrity of an attorney's trust account and the checks drawn upon it. Rule Regulating the Florida Bar 5-1.1(a)-(b), provides that a client's funds held in an attorney's trust account are held in "trust" and directs that such funds be handled pursuant to the instruction of the client. The rule specifically states that a lawyer must "hold in trust . . . funds and property of clients . . . that are in a lawyer's possession in connection with a representation." R. Regulating Fla. Bar 5-1.1(a)(1). Further, "[m]oney or other property entrusted to an attorney for a specific purpose . . . is held in trust and must be applied only to that purpose." Id. R. 5-1.1(b).
In addition, an attorney is also obligated under the rules to promptly distribute to the client monies received from a third party not subject to dispute. See id. R. 5-1.1(e)-(f). Moreover, an attorney can accept another attorney's trust account check before the funds have been credited to the attorney's trust account if the attorney has a "reasonable and prudent belief" that the deposit would clear and represent collected funds in the trust account in a reasonable amount of time. R. Regulating Fla. Bar 5-1.1(j)(4).
However, another provision of the rule, rule 5-1.1(e), specifically provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person." (Emphasis added.) Further, the comment to rule 5-1.1 states:
Third parties, such as a client's creditors, may have lawful claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client. When the lawyer has a duty under applicable law to protect the third-party claim and the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved.[[14]]
*640 In Robert C. Malt & Co. v. Colvin, 419 So.2d 745 (Fla. 4th DCA 1982), the Fourth District Court of Appeal wrote:
We are aware that generally the provisions of the garnishment statute, being in derogation of the common law, should be adhered to with strictness. We are also sensitive to the unique circumstance of the attorney-client relationship which existed between the garnishee and the judgment debtor whose assets were sought to be reached. Nonetheless, the law looks to substance, not form. We hold that when [the attorney] knew the writ of garnishment contained a known and obvious clerical error, i.e., identifying Malt as the defendant whose assets were sought to be garnished by Malt, and knew the writ was obviously intended to garnish assets of the judgment debtor (his own client), neither a strict adherence to the letter of the writs command nor the attorneys duty to his client will permit [the attorney] to ignore with impunity what he knew the writ clearly and obviously intended to command.
Id. at 747 (footnote omitted). Thus, as recognized by the Fourth District, the special relationship between an attorney and his or her client is an insufficient basis upon which to circumvent the requirements of the garnishment statute.
Furthermore, because attorneys and their trust accounts are subject to the same provisions of the garnishment statute as any other bank or non-bank garnishee, we cannot discern a principled basis for holding that funds located in an attorney's trust account warrant any greater protection from creditors than funds located in the client's personal account. As the Second District stated in this case, "[t]o exempt trust accounts from the garnishment provisions that apply to bank and non-bank garnishees would result in allowing the client a protection in the trust account that he would not have if the funds were in his own account." First American, 955 So.2d at 1235. We agree with the Second District that such a result is not justified and therefore reject AME's assertion that attorneys and their trust accounts should be exempt from the obligations imposed on garnishees under the Florida garnishment statute.

E. This Case
In this case, when the second writ of garnishment was served on June 25, 2002, at 3:30 p.m., AME immediately answered the writ that same day by denying that it was in possession or control of any funds that were the property of Preclude. In fact, as later determined by bank records, the check issued to Preclude had not yet been presented for payment to AME's bank at the time the writ was served and answered by AME. The check, which had been written and delivered by AME on June 21, 2002, the same day that AME received the settlement funds, was not presented *641 to AME's bank for payment until June 28, 2002, three days after AME answered the writ of garnishment denying possession of the funds.
Under these circumstances, AME did not comply with the statute when it answered the writ. AME had an obligation to inquire of the bank as to whether the check had been presented for payment and, if not, to issue a stop payment order if it had the ability to do so.[15] At a minimum, AME had an obligation to fully answer the writ by explaining the status of the funds as part of its good faith obligation imposed by the garnishment statute. See § 77.06(3), Fla. Stat. As stated by the Third District in Dixie National Bank v. Chase, 485 So.2d 1353, 1356 (Fla. 3d DCA 1986):
[T]his statutory scheme contemplates full disclosure in the garnishee's answer of all debts owed by the garnishee to the defendant debtor and a simultaneous garnishment of said funds so as to fully protect the garnishor creditor in collecting on a debt due him by the defendant debtor. The garnishee is also protected against possible liability for its actions in serving an answer and garnishing funds so long as it acts in good faith. . . . The statutory scheme [section 77.06] cannot tolerate incomplete answers wherein only some of the debts owed are disclosed and garnished.
In this case, AME failed to fully answer the writ or take any of the other steps required of it and thus subjected itself to the liability imposed by the garnishment statute.

CONCLUSION
We conclude that Florida law imposes on both bank and non-bank garnishees the duty to retain funds held by the garnishee, even after a check on those funds has been drawn by the garnishee and delivered to the payee.[16] We hold that the funds remain in the possession or control of an attorney garnishee if service of the writ of garnishment occurs after a check drawn on an attorney's trust account has been written and delivered to a client but before presentment to the attorney's bank. Accordingly, pursuant to the provisions of the garnishment statute, the attorney in those circumstances has an obligation to inquire of the bank as to the status of the funds in its account and to issue a stop payment order if he or she has the ability to do so. This decision is consistent with the garnishment statute and prior case law interpreting the statute, as well as the Rules Regulating the Florida Bar.
Accordingly, we answer the certified question in the affirmative and approve the decision of the Second District. We remand to the district court for proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Section 77.19, Florida Statutes (2002), states, "No garnishee . . . shall retain out of the money more than double the amount which the writ of garnishment specifies as the amount plaintiff expects to recover or more than double the amount of the judgment plaintiff has recovered."
[2] Section 673.4081 was formerly located in section 673.409, Florida Statutes (1991). However, that section was repealed in 1992.
[3] Under the U.C.C., a reasonable time for any action "depends on the nature, purpose and circumstances" of that action. § 671.204(1), Fla. Stat. (2007).
[4] It might be argued that the funds still remain in the garnishee's account after presentment but before the check has been finally paid by the bank. However, that issue is not before us.
[5] We are not alone in adopting this view. See Huybrechts v. Huybrechts, 4 Conn.App. 319, 494 A.2d 593, 594 (1985) (stating that "it is not the check, but the debt itself which is garnished" and holding that funds were still subject to garnishment since the notice of garnishment was received before the check was paid); see also State Bank of S. Utah v. Stallings, 19 Utah 2d 146, 427 P.2d 744 (1967) (concluding that a check that has been delivered to a payee but not yet presented for payment did not constitute an assignment of funds and holding that the check was still subject to garnishment); Pacific First Fed. Sav. & Loan Ass'n v. Flathead Properties, Inc., 47 Or.App. 407, 614 P.2d 1210, 1213 n. 2. (1980) (declining to decide the issue but noting that where a check was delivered but not paid until after a notice of garnishment was served, it appeared that the garnishee held money belonging to the judgment debtor).
[6] The repealed portion provided:

A bank or other financial institution authorized to accept deposits, upon being served with a writ of garnishment, shall report in its answer and retain, subject to the provisions of s. 77.19 and subject to disposition as provided in this chapter, any deposit, account or tangible or intangible personal property in the possession or control of such garnishee, if the deposit or ownership records of such bank or other financial institution relating to such deposit or property reflect that any defendant named in the writ has or appears to have an ownership interest therein, whether solely or with another or others not named in the writ; but the answer shall state the name or names and address if known to the garnishee of the defendant and any such other or others having or appearing to have an ownership interest therein as shown on said records, and the plaintiff shall, within 5 days of the service of the answer on him, serve by delivery or by mail on the defendant and each such other person notice of the writ and the garnishees answer and shall file in the proceeding a certificate of such service at the address of the defendant as shown on the records of the bank.
§ 77.06(2), Fla. Stat. (1983) (emphasis added). Section 77.06(2) now reads:
The garnishee shall report in its answer and retain, subject to the provisions of s. 77.19 and subject to disposition as provided in this chapter, any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee; and the answer shall state the name or names and addresses, if known to the garnishee, of the defendant and any other persons having or appearing to have an ownership interest in the involved property.
(Emphasis added.)
[7] New Mexico holds that a non-bank garnishee has no duty to stop payment on a check issued before receipt of a garnishment writ. Kansas, Texas, Missouri, Maine and Georgia apply the same exemption to garnishees in general, including non-bank garnishees. See 6 Am.Jur.2d Attachment and Garnishment § 529 (1999) ("The general rule is that the drawer of a check is under no duty or obligation to stop payment, when garnished, for the benefit of the garnishing plaintiff, though there is contrary authority at least with respect to personal checks made payable to the garnishment debtor rather than bank teller checks.") (footnotes omitted).
[8] See Watt-Harley-Holmes Hardware Co. v. Day, 1 Ga.App. 646, 57 S.E. 1033, 1034 (1907) ("[W]e do not think a garnishee can stop the payment of a check which he has given in payment of a debt, in the absence of fraud or mistake, without incurring liability to the holder of such check."); Schwerdt, Grace & Niemackl v. Speedway Festivals, Inc., 7 Kan. App.2d 40, 637 P.2d 477, 483 (1981) (finding that the payee/debtor had presented the issued check to another bank, a holder in due course, and garnishee would have been held liable to that bank in the amount of the issued check if garnishee had stopped payment); Frickleton v. Fulton, 626 S.W.2d 402, 408 (Mo.Ct.App.S.D.1981) ("Stopping payment would not absolve the drawer-drawee . . . from liability to a holder in due course."); Central Security & Alarm Co. v. Mehler, 125 N.M. 438, 963 P.2d 515, 519 (Ct.App.1998) (stating that disputes could arise between a non-bank garnishee and a holder in due course if the garnishee stops payment and that requiring garnishees to stop payment exposes the garnishee to a "risk of loss or double liability").
[9] See First Nat'l Bank of Boston v. New England Sales, Inc., 629 A.2d 1230, 1232 (Me. 1993) ("[I]ssuance and delivery of a check to a payee creates an implied agreement that the check will be honored when presented."); Pearson Grain Co. v. Plains Trucking Co., 494 S.W.2d 639, 641 (Tex.Civ.App.1973) (applying the rule that a garnishee's check to the judgment debtor suspends the judgment debtor's remedy against the garnishee and defeats subsequent garnishment if the check is not dishonored).
[10] The drawer of a certified check does not have the authority to stop payment. Florida Power & Light Co. v. Tomasello, 103 Fla. 1076, 139 So. 140, 141 (1932). Likewise, "[n]either the bank nor a purchaser of a cashier's check from the bank has a right to `stop payment' on a cashier's check." Warren Finance, Inc. v. Barnett Bank of Jacksonville, N.A., 552 So.2d 194, 197 (Fla.1989).
[11] This section specifically provides:

If the obligated bank wrongfully refuses to pay a cashier's check or certified check, wrongfully stops payment of a teller's check, or wrongfully refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.
§ 673.4111(2), Fla. Stat.
[12] The statute states that a claim for a lost, destroyed, or stolen check becomes enforceable at the later of "[t]he time the claim is asserted; or . . . [t]he 90th day following the date of the check, in the case of a cashier's check or teller's check, or the 90th day following the date of the acceptance, in the case of a certified check." § 673.3121(2)(b)(1)(a)-(b), Fla. Stat.
[13] Section 673.3121(2)(b)(4) states:

When the claim becomes enforceable, the obligated bank becomes obliged to pay the amount of the check to the claimant if payment of the check has not been made to a person entitled to enforce the check. Subject to s. 674.302(1)(a), payment to the claimant discharges all liability of the obligated bank with respect to the check.
[14] We recognize that the circumstances giving rise to the instant case occurred in 2002. In fact, the comment to the version of the rule as amended in 2002 states:

Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client.
R. Regulating Fla. Bar 5-1.2 cmt. (2002) (emphasis added). Although the current version of the rule requires that lawyers refuse to surrender certain property to the client, we recognize that even in the version of the rule as amended in 2002, the rule gave lawyers the option of choosing to refuse to relinquish property to the client, in spite of the fiduciary relationship between a lawyer and his or her client. Any remaining distinctions between these two versions are not material to our decision in this case.
[15] We do not reach the issue as to how expeditiously a garnishee must inquire as to the status of funds held in the bank account once a check has been written or delivered except to note that a garnishee's responses should be governed by standards of reasonableness.
[16] Our decision to impose a stop payment duty on attorneys does not apply to certified or cashier's checks issued on or purchased with funds from an attorney trust account.