CAMPBELL, Acting Chief Judge.
Appellant, Kenneth R. Buckner, a teacher in the Glades County School System, challenges the decision of appellee, Glades County School Board, rejecting its Superintendent of Schools’ recommendation that appellant be awarded a professional service contract for the 1997-98 school year. We agree with appellant that the proceedings leading to the denial of his contract failed to afford him the due process to which he was entitled. We therefore reverse and remand for further proceedings in which appellant’s due process rights will be ensured. Because we focus in this appeal solely on the denial of appellant’s due process rights, we find it unnecessary to discuss the evidentiary matters, or lack thereof, considered by appellee in the proceedings below.
In April 1997, appellant was completing his third consecutive probationary year of service in the Glades County School System. Gary L. Clark, the Superintendent of Schools of Glades County, on the recommendation of the principal of the school where appellant was employed, nominated appellant for appointment to a professional service contract (a “tenured” or “continuing contract”). Ap-pellee considered the nomination at its April 1997 meeting. After a motion was made to accept the nomination, a discussion among appellee’s board members ensued. The discussion consisted nearly entirely of hearsay accusations, complaints, and comments directed toward appellant’s qualifications. An evidentiary hearing was not held. Appellant was not present nor had he been noticed to be present. Appellee voted four-to-one to reject Superintendent Clark’s nomination.'
There are several statutory provisions that are important to our consideration of this appeal. Section 231.36(l)(a), Florida Stat *864 utes (1995), provides that each person employed on an annual probationary basis as a member of the instructional staff in any district school system shall receive a written contract which shall contain provisions for dismissal during the term of the contract only for “just cause."
Section 231.29, Florida Statutes ((1995) and as subsequently amended) provides for and requires that there be established in each school district assessment pi’ocedures for assessing the performance of the duties and responsibilities of all instructional personnel. The Department of Education is now required to approve each district’s instructional personnel assessment system.
Section 231.29(2)-(7), Florida Statutes (1995), specifically provided in pertinent part in regard to the assessment procedure as follows:
(2)The assessment procedure shall comply with, but shall not be limited to, the following requirements:
(a) An assessment relating to the criteria specified in subsection (3) shall be conducted for each employee at least once a year. Such assessment shall be based upon sound educational principles and contemporary research in effective educational practices.
(b) All personnel shall be fully informed of the criteria and procedures associated with the assessment process before the assessment takes place.
(c) A written report of each assessment shall be made and a copy thereof shall be given to the employee no later than 10 days after the assessment takes place. The written report of assessment shall be discussed with the employee by the person responsible for preparing the report. The employee shall have the right to initiate a written response to the assessment, and the response shall become a permanent attachment to his or her personnel file.
(d) In the event that an employee is not performing his or her duties in a satisfactory manner, the evaluator shall notify the employee in writing of such determination and describe such unsatisfactory performance. The evaluator shall thereafter confer with the employee, make recommendations with respect to specific areas of unsatisfactory performance, and provide assistance in helping to correct such deficiencies within a reasonable, prescribed period of time.
(3) A complete statement of the assessment criteria shall include, but shall not be limited to, observable indicators that relate to the following:
(a) Ability to use appropriate classroom management techniques, including ability to maintain appropriate discipline.
(b) Knowledge of subject matter. The district school board shall make special provisions for evaluating teachers who are assigned to teach out-of-field.
(c) Ability to plan and deliver instruction.
(d) Ability to evaluate instructional needs.
(e) Other professional competencies, responsibilities, and requirements as determined by the local district.
(4) The individual responsible for the supervision of the employee shall make the assessment of the employee and forward such assessment to the superintendent for the purpose of reviewing the employee’s contract.
(5) The superintendent shall notify the department of any instructional personnel who receive two consecutive unsatisfactory annual evaluations and who have been given written notice by the district that their employment is being terminated or is not being renewed or that the school board intends to terminate, or not renew, then-employment. The department shall conduct an investigation to determine whether action shall be taken against the certifi-cateholder pursuant to s. 231.28(l)(b).
(6) Nothing in this section shall be construed to grant a probationary employee a right to continued employment beyond the term of his or her contract.
(7) The district school board shall establish a procedure annually reviewing instructional personnel assessment systems to determine compliance with this section. All substantial revisions to an approved system must be reviewed and approved by *865 the school board before being used to assess instructional personnel. Upon request by a school district, the department shall provide assistance in developing, improving, or reviewing an assessment system.
Appellee rejected appellant’s nomination for a professional service contract for alleged “good cause” under the provisions of section 230.23(5), Florida Statutes (1995). Interestingly enough, while section 231.29 establishes detailed requirements and criteria for assessment of teachers by their supervisors, section 230.23(5) establishes no standards or criteria for a school board to make a “good cause” determination to reject a superintendent’s nomination. We concede we cannot find a requirement, statutory or otherwise, that a “good cause” rejection be based on the criteria established for assessment procedures of section 231.29. But the assessment procedures are mandated in part to alert instructional staff when their performance falls below acceptable standards and to address concerns about instructional staff deficiencies.
Without attempting to establish a binding rule, we do make the observation that it appears contrary to the intent of the assessment procedures established by statute that a teacher who has no record of section 231.29 assessments establishing unsatisfactory performance could be rejected in a “good cause” proceeding except for extraordinary matters that arise outside the scope of the mandated assessment procedures. At least a teacher, such as appellant who had no unsatisfactory assessments, should be afforded substantial due process protection before he or she is rejected for matters that should have and could have arisen during assessment procedures. It would appear that any determination of “good cause” by a school board for a rejection of a superintendent’s nomination shall at least contain a “good cause” showing as to why the assessment procedures were ignored.
In appellant’s case appellee entered into a discussion of ex parte hearsay reports of conduct that clearly should have arisen, if at all, during the assessment procedures. Without notifying appellant before a vote was taken so that he could respond to these unknown ex parte charges, appellee proceeded to a negative vote on appellant’s nomination. When appellant then requested that a hearing be conducted by an administrative law judge assigned by the Division of Administrative Hearings of the Department of Management Services, that request was denied and a second proceeding was held before appellee. Normally it is the choice of the agency head to either conduct a formal hearing itself in such a ease or refer it to an administrative law judge. However, in this case, appellee had already expressed overwhelming bias against appellant by a negative vote conducted without his presence in the first proceeding on his nomination. We conclude therefore that appellant was entitled to a hearing before an administrative law judge to assure that his due process rights would not be subverted by the already declared bias of appellee. By its actions, appellee had in fact become a party litigant in the proceedings. See §§ 120.569, and 120.57, Fla. Stat. (1995).
Moreover, it appears that appellee had retained special counsel to not only represent appellee in appellant’s “good cause” hearing but also to act as “prosecutor” in that proceeding. Since it appears that special counsel offered legal advice to appellee during the proceedings as well as acting as its prosecutor, appellant was thereby denied a fair hearing. See McIntyre v. Tucker, 490 So.2d 1012 (Fla. 1st DCA 1986).
This court considered a similar case in Von Stephens v. School Board, 338 So.2d 890 (Fla. 2d DCA 1976). In Von Stephens, we stated:
The responsibility of a school board has always been to appoint personnel recommended and nominated by the superintendent, not to select them. See State ex rel. Lawson v. Cherry, Fla.1950, 47 So.2d 768. Unless good cause is shown, that is failure of appellant to meet the criteria of Chapter 231, Fla. Stat., it is incumbent on the board to appoint and contract with the nominee. State ex rel. Kelley v. Golson, supra; State ex rel. Lawson v. Cherry, supra; Fla. Stat. § 230.23(5) (1973).
*866 A nomination by the superintendent entitles the nominee to due process protections of his interest in the nomination. This “legitimate claim of entitlement” was created by the terms of Fla. Stat. § 230.23(5) which, as we have explained above, mandates appointment by the Board absent good cause. Cf. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This “claim” entitles the nominee to notice and a hearing where grounds for deprivation of the right of appointment would be shown and could be challenged for legal sufficiency. See Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Appellant’s interest is more than a mere subjective expectation in employment which would not be safeguarded by due process. Perry v. Sin-dermann, supra. Furthermore the Supreme Court of Florida specifically established a property right in a nominee by its holding in Board of Public Instruction for County of St. Lucie, Florida v. Connor, 1941, 148 Fla. 364, 4 So.2d 382, that at the time a nomination is made to the board an implied contract arises between the school district and the nominee. That nomination is final unless the board finds that the nominee is morally or professionally disqualified. State ex rel. Lawson v. Cherry, supra.
338 So.2d at 894.
Section 231.36(3)(a), Florida Statutes (1995), provides in regard to professional service contracts for instructional personnel as follows:
(3)(a) The school board of each district shall provide a professional service contract as prescribed herein. Each member of the instructional staff who completes the following requirements prior to July 1, 1984, shall be entitled to and shall be issued a continuing contract in the form prescribed by rules of the state board pursuant to s. 231.36, Florida Statutes 1981. Each member of the instructional staff who completes the following requirements on or after July 1,1984, shall be entitled to and shall be issued a professional service contract in the form prescribed by rules of the state board as provided herein:
1. The member must hold a professional certificate as prescribed by s. 231.17 and rules of the State Board of Education;
2. The member must have completed 3 years of probationary service in the district, 1 year of which must be the professional orientation program where required, during a period not in excess of 5 successive years, except for leave duly authorized and granted; and
3. The member must have been recommended by the superintendent for such contract and reappointed by the school board based on successful performance of duties and demonstration of professional competence.
(b) The professional service contract shall be effective at the beginning of the school fiscal year following the completion of all requirements therefor.
(c) The period of service provided herein may be extended to 4 years when prescribed by the school board and agreed to in writing by the employee at the time of reappointment.
(Emphasis supplied.)
We readily recognize that instructional staff employed under annual probationary contracts have no right to future employment after their annual contract expires. However, a member of the instructional staff nominated by the superintendent for reemployment then becomes vested with a right to a due process consideration of that nomination. See Von Stephens, 338 So.2d at 895. When a member of the instructional staff has been nominated and reappointed for three consecutive years without a determination of unsuccessful performance or professional incompetence, “good cause” for the rejection of a nomination for a professional service contract should be more difficult to demonstrate. See § 231.36(3)(a)3.
The statutory scheme established for the selection of instructional staff in our school system is logical. Section 230.33, Florida Statutes (1995), clearly designates *867 the superintendent as the individual responsible for making sound nominations of instructional staff and for directing and supervising then’ work. The various school boards, such as appellee, should not and may not arbitrarily and without due process reject such a nomination made by a superintendent. See Foreman v. Columbia County School Board, 429 So.2d 383 (Fla. 1st DCA 1983).
Our schools are not in danger of poor instructional staff just because a school board must act fairly, reasonably, with good cause, and after affording due process before a superintendent’s nomination may be rejected. Instructional staff are, before their nominations for contracts are submitted to a school board, subject to detailed and precise assessment procedures to ensure their qualification to teach. In addition, each nominee must have been recommended for continued employment by his or her immediate supervisor and then nominated by the superintendent. It is intended by the statutory scheme that the critical evaluation of instructional staff for the purpose of continued employment be accomplished by those most familiar with their qualifications and responsible for their supervision.
Reversed and remanded for further proceedings before an administrative law judge.
QUINCE and GREEN, JJ., concur.