WALLACE, Judge.
Michelle Gabriele, a teacher, appeals a Final Order entered by the School Board of Manatee County (the School Board), suspending her employment for fifteen days without pay and returning her from a professional service contract to an annual contract. On this appeal, Ms. Gabriele challenges only the authority of the School Board to return her to annual contract status. Because the School Board lacks the statutory authority to return Ms. Ga-briele from a professional service contract to an annual contract, we reverse the Final Order to the extent that it purports to change Ms. Gabriele’s contract status.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
The School Board has employed Ms. Gabriele as a teacher for more than ten years. During the 2010-2011 school year, Ms. Gabriele was a member of the instructional staff and was employed under a professional service contract. Thus the School Board could not suspend Ms. Ga-briele or terminate her employment except for good cause. See § 1012.33(l)(a), (6)(a), Fla. Stat. (2010).
On June 3, 2011, the School Board’s superintendent sent Ms. Gabriele a letter notifying her that he intended to recommend to the School Board that she be suspended without pay for fifteen days and that she be returned to an annual contract. The superintendent detailed his reasons for the recommended discipline in an administrative complaint that he attached to the letter. Ms. Gabriele timely requested a formal administrative hearing on the administrative complaint, and the superinten *479 dent referred the matter to the Division of Administration Hearings.
After a formal hearing, the Administrative Law Judge (ALJ) entered a Recommended Order finding that the School Board had just cause to discipline Ms. Gabriele. The ALJ also recommended that the School Board enter a Final Order suspending Ms. Gabriele for fifteen days without pay and returning her to an annual contract. On April 9, 2012, the School Board entered a Final Order that (1) denied Ms. Gabriele’s exceptions to the Recommended Order, (2) adopted the Recommended Order as the School Board’s Final Order, (3) suspended Ms. Gabriele’s employment for fifteen days without pay, and (4) returned Ms. Gabriele to an annual contract. This appeal followed.
II. FRAMING THE ISSUE
On appeal, Ms. Gabriele does not challenge the finding that the School Board had just cause for imposing discipline or the fifteen-day suspension without pay. Instead, Ms. Gabriele challenges the School Board’s authority under the applicable statutes to change her contract status from a professional service contract to an annual contract. Accordingly, the issue before us is whether the School Board had the statutory authority to discipline a member of its instructional staff, who is employed under a professional service contract, by returning the teacher to annual contract status. Because the issue presented involves a question of statutory interpretation, we apply a de novo standard of review. Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc., 982 So.2d 628, 632 (Fla.2008).
III. DISCUSSION
Florida has a detailed plan for education known as “the Florida K-20 education system.” This plan is statutory in nature. The legislature has codified the plan in chapters 1000 through 1013 of the Florida Statutes as the “Florida K-20 Education Code.” § 1000.01(1), Fla. Stat. (2010).
Chapter 1012 of the Code addresses personnel issues. During the time period pertinent to this case, chapter 1012 recognized three types of written contracts under which school boards might employ members of their instructional staffs: (1) an annual contract, (2) a continuing contract, and (3) a professional service contract.[1] § 1012.33; Lee Cnty. Sch. Bd. v. Silveus, Case No. 04-4096, 2005 Fla. Div. Adm. Hear. LEXIS 904 *17 (Fla. DOAH Mar. 16, 2005), adopted in pertinent part, Case No. 05-0003 (Lee Cnty. Sch. Bd. June 14, 2005). Annual contracts expire at the end of the school year. See MacPherson v. Sch. Bd. of Monroe Cnty., 505 So.2d 682, 683 n. 1 (Fla. 3d DCA 1987) (citing Lake Cnty. Educ. Ass’n v. Sch. Bd. of Lake Cnty., 360 So.2d 1280 (Fla. 2d DCA 1978)). Accordingly, a teacher employed under an annual contract has no right to reemployment. Id.; see also Buckner v. Sch. Bd. of Glades Cnty., 718 So.2d 862, 866 (Fla. 2d DCA 1998) (“[Ijnstructional staff employed under annual probationary contracts have no right to future employment after their annual contract expires.”).
*480 The remaining two types of contracts do not expire at the end of the school year. However, continuing contracts are limited to those employees who obtained their contract status before July 1, 1984. § 1012.33(4)(a); Dietz v. Lee Cnty. Sch. Bd., 647 So.2d 217, 218 (Fla. 2d DCA 1994) (Blue, J., specially concurring) (“A continuing contract applies only to instructional staff attaining their contract status before July 1984.”). Ms. Gabriele was a long-time employee, and she was employed under a professional service contract. “[A] professional service contract is a continuous contract which renews automatically, and can only be terminated for just cause pursuant to section 1012.33, Florida Statutes, or based upon uncorrected performance deficiencies pursuant to section 1012.34, Florida Statutes.” Orange Cnty. Sch. Bd. v. Rachman, 87 So.3d 48, 49 n. 1 (Fla. 5th DCA 2012).
The authority of school boards to suspend, dismiss, and return teachers to annual contract status is controlled by statute. Section 1012.22(l)(f) confers a general grant of authority to school boards as follows:
Suspension, dismissal, and return to annual contract status.—The district school board shall suspend, dismiss, or return to annual contract members of the instructional staff and other school employees; however, no administrative assistant, supervisor, principal, teacher, or other member of the instructional staff may be discharged, removed, or returned to annual contract except as provided in this chapter.
(Emphasis added.) However, the general grant of authority set forth in section 1012.22(l)(f) must be read in conjunction with section 1012.33.
Section 1012.33 sets forth detailed provisions regulating and limiting a school board’s authority over teacher discipline. Notably, the types of discipline authorized under section 1012.33 differ depending on whether the member of the instructional staff is employed under a continuing contract or a professional service contract. Thus a careful reading of section 1012.33 is essential to the analysis of the issue presented.
Section 1012.33 provides, in pertinent part, as follows:
(l)(a) Each person employed as a member of the instructional staff in any district school system ... shall be entitled to and shall receive a written contract as specified in this section. All such contracts, except continuing contracts as specified in subsection (4), shall contain provisions for dismissal during the term of the contract only for just cause. Just cause includes, but is not limited to, the following instances, as defined by rule of the State Board of Education: immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, or being convicted or found guilty of, or entering a plea of guilty to, regardless of adjudication of guilt, any crime involving moral turpitude.
[[Image here]]
(3)(a) Each district school board shall provide a professional service contract as prescribed herein. Each member of the instructional staff who completed the following requirements prior to July 1, 1984, shall be entitled to and shall be issued a continuing contract in the form prescribed by rules of the state board pursuant to s. 231.36, Florida Statutes (1981). Each member of the instructional staff who completes the following requirements on or after July 1, 1984, shall be entitled to and shall be issued a professional service contract in the form *481 prescribed by rules of the state board as provided herein:
[[Image here]]
(e) A professional service contract shall be renewed each year unless the district school superintendent, after receiving the recommendations required by s. 1012.34, charges the employee with unsatisfactory performance and notifies the employee of performance deficiencies as required by s. 1012.34....
[[Image here]]
(4)(a) An employee who had continuing contract status prior to July 1, 1984, shall be entitled to retain such contract and all rights arising therefrom as prescribed by rules of the State Board of Education adopted pursuant to s. 231.36, Florida Statutes (1981), unless the employee voluntarily relinquishes his or her continuing contract.
(b) Any member of the district administrative or supervisory staff and any member of the instructional staff, including any school principal, who is under continuing contract may be dismissed or may be returned to annual contract status for another 3 years in the discretion of the district school board, at the end of the school year, when a recommendation to that effect is submitted in writing to the district school board on or before April 1 of any school year, giving good and sufficient reasons therefor, by the district school superintendent, by the school principal if his or her contract is not under consideration, or by a majority of the district school board....
(c) Any member of the district administrative or supervisory staff and any member of the instructional staff, including any school principal, who is under continuing contract may be suspended or dismissed at any time during the school year; however, the charges against him or her must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or being convicted or found guilty of, or entering a plea of guilty to, regardless of adjudication of guilt, any crime involving moral turpitude, as these terms are defined by rule of the State Board of Education ....
[[Image here]]
(6)(a) Any member of the instructional staff, excluding an employee specified in subsection (Jf), may be suspended or dismissed at any time during the term of the contract for just cause as provided in paragraph (l)(a).
(Emphasis added.) With regard to the authority of a school board to return a member of the instructional staff to annual contract status, section 1012.33 draws a sharp distinction between those teachers with continuing contracts and those with professional service contracts. A teacher employed “under [a] continuing contract may be dismissed or ... returned to annual contract status for another 3 years in the discretion of the ... school board, at the end of the school year, ... [for] good and sufficient reasons.” § 1012.33(4)(b); Burns v. Sch. Bd. of Palm Beach Cnty., 283 So.2d 873, 875 (Fla. 4th DCA 1973) (construing section 231.36(4), the predecessor to section 1012.33(4)). In contrast, section 1012.33(6)(a) provides that teachers not under a continuing contract, i.e., teachers under a professional service contract, may only be suspended or dismissed for just cause. The statute does not grant school boards the authority to return an employee under a professional service contract to an annual contract at any time.
The School Board argues that its power to suspend or dismiss a teacher under a professional service contract for just cause necessarily includes the power *482 to return such a teacher to annual contract status. We disagree. The specific language of section 1012.33(4) proves that the legislature knew how to provide school boards with the authority to return a member of the instructional staff to annual contract status when it wished to do so. In section 1012.33(4), the legislature expressly granted school boards the authority to return teachers under continuing contracts to annual contract status. In the same statutory section, the legislature omitted language that would authorize school boards to return employees under professional service contracts to annual contract status. § 1012.33(6). We. cannot overlook or disregard the statute’s disparate treatment of teachers under continuing contracts and teachers under professional service contracts. “When the legislature has used a term, as it has here, in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.” Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995). “ ‘The legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended.’” State v. Mark Marks, P.A., 698 So.2d 533, 541 (Fla.1997) (quoting Dep’t of Prof'l Regulation v. Durrani, 455 So.2d 515, 518 (Fla. 1st DCA 1984)). In addition, we must reject the School Board’s argument based on its claim of implied authority because the plain and definite language of the statute controls our task of statutory interpretation. See Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960).
The School Board suggests that the result we reach improperly limits it from imposing a lesser form of discipline — a return to annual contract status — in lieu of suspension or dismissal for teachers employed under a professional service contract. Thus the result we reach here may actually work to the disadvantage of such teachers. However, it seems likely that the discipline of most teachers by returning them to annual contract status eventually results in failure to renew the teacher’s contract at the end of one or more contract terms. Under these circumstances, termination of the teacher’s employment remains the ultimate consequence. In any event, considerations such as these are for the legislature, not the courts. We base our decision on the pertinent statutory language.
IY. CONCLUSION
For the foregoing reasons, we hold that the School Board lacked the authority to discipline Ms. Gabriele by changing her contract status from a professional service contract to an annual contract. We reverse the Final Order to the extent that it returned Ms. Gabriele to an annual contract. In all other respects, we affirm the Final Order.
In its administrative complaint, the School Board did not seek to dismiss Ms. Gabriele. Accordingly, on remand, the School Board shall restore Ms. Gabriele to her professional service contract. In addition, the School Board shall reimburse Ms. Gabriele for any reduction in pay and undo any other adverse consequences resulting from its unauthorized attempt to return her to an annual contract.
Affirmed in part, reversed in part, and remanded with directions.
ALTENBERND and CRENSHAW, JJ., Concur.

. The legislature repealed paragraphs (a), (b), and (c) of subsection (3) of section 1012.33 effective July 1, 2011. Ch. 2011-37, § 19, at 504, Laws of Fla. As a result, school boards are no longer authorized to issue professional service contracts. Instead, the only contracts school boards are authorized to issue to members of their instructional staffs are probationary contracts for new hires and annual contracts for all others. Ch. 2011-1, § 5, at 54-56, Laws of Fla. To put it simply, tenure is no longer available for members of a school board’s instructional staff hired on or after July 1, 2011.