DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BROWARD TEACHERS UNION, LOCAL 1975, FLORIDA EDUCATION ASSOCIATION (FEA), AMERICAN FEDERATION OF TEACHERS (AFT), NATIONAL EDUCATION ASSOCIATION (NEA), AMERICAN FEDERATION OF LABOR/CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO),**
Appellants,

v.

**THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA,**
Appellee.

No. 4D15-1910

[June 22, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. CACE-14-017594-2.

Philip J. Padovano of Brannock & Humphries, Tampa, and Pamela L. Cooper, Tallahassee, for appellant, Florida Education Association.

Douglas G. Griffin, Assistant General Counsel, The School Board of Broward County, Fort Lauderdale, for appellee.

GROSS, J.

Broward Teachers Union appeals from a final judgment on the pleadings entered in favor of the School Board of Broward County.

The facts of this close case are undisputed. The single issue presented concerns the meaning of a statutory provision, which provides that teachers "on annual contract as of July 1, 2014, shall be placed on the performance salary schedule . . . ." § 1012.22(1)(c)4.a., Fla. Stat. (2014).

The Union interprets the provision to mean that only those teachers hired **on or after** July 1, 2014, are to be placed on the performance salary schedule, while the Board's interpretation is that those teachers on annual contract **at the time of** the effective date are to be put on the performance salary schedule.

We affirm and write to address the circuit court's adoption of the Board's statutory interpretation.

### Factual Background

In 2011, the Florida legislature added two salary schedule provisions to subsection 1012.22(1)(c) of Chapter 1012, Florida Statutes—the grandfathered salary schedule and the performance salary schedule. The new provisions went into effect in 2014. The grandfathered salary schedule provision identifies those employees entitled to remain on the earlier salary schedule and those who would be compelled to move to a performance salary schedule.

In early 2014, the parties met to address the implementation of the new performance salary schedule. A disagreement emerged concerning whether the new performance salary schedule provisions would apply to employees hired by the School Board before July 1, 2014. The Union interpreted the new provisions to apply only to personnel hired on or after July 1, 2014, while the Board interpreted the same provisions to apply to employees previously hired but still employed as of the effective date.

The Union sought declaratory relief against the Board. The Board's answer admitted all the factual allegations of the Union's complaint. The Union moved for a judgment on the pleadings because the action turned "solely on the proper interpretation of the statute in question" and was thus a "pure question of law." The Board cross moved for judgment on the pleadings. The trial court sided with the Board and declared that section 1022.22

> requires the School Board of Broward County, Florida, ("School Board") to place every teacher who was on annual contract status as of July 1, 2014, on the School Board's performance salary schedule, including those teachers on annual contract status on that date who were hired by the School Board prior to July 1, 2014.

### Standard of Review

Both an order granting judgment on the pleadings and questions of statutory interpretation are reviewed de novo. *See Newsome v. GEO Grp., Inc.*, 72 So. 3d 168, 170 (Fla. 4th DCA 2011); *Fla. Dep't of Transp. v. Clipper Bay Invs., LLC,* 160 So. 3d 858, 862 (Fla. 2015).

### The Relevant Statutes

Section 1012.22, Florida Statutes, was amended in 2011, as a part of the Student Success Act ("the Act"), to add the grandfathered salary schedule and the performance salary schedule provisions. *See* Ch. 2011-1, Laws of Fla. To properly evaluate the disputed provision, it helps to define several key terms.

"'Instructional personnel' means any K-12 staff member whose function includes the provision of direct instructional services to students. Instructional personnel also includes K-12 personnel whose functions provide direct support in the learning process of students." § 1012.01(2), Fla. Stat. (2014). Instructional personnel include classroom teachers, student personnel services (guidance counselors), librarians, and other instructional staff like learning resource specialists. *Id.* Other kinds of employees include administrative personnel, "who perform management activities." § 1012.01(3). These include district school superintendents, principals, and career center directors. *Id.*

There are three types of contracts for teachers—a continuing contract, a professional services contract, and an annual contract. A **continuing contract** is a status an employee had "prior to July 1, 1984," entitling the employee "to retain such contract and all rights arising therefrom as prescribed by rules of the State Board of Education adopted pursuant to s. 231.36, Florida Statutes (1981), unless the employee voluntarily relinquishes his or her continuing contract." § 1012.33(4)(a), Fla. Stat. (2014).

A **professional service contract** is one which requires "a professional certificate covering the classification, level, and area for which the applicant is deemed qualified . . . ." § 1012.56(1)(a), Fla. Stat. (2014). "Each member of the instructional staff who completes [certain] requirements on or after July 1, 1984, shall be entitled to and shall be issued a professional service contract . . . ." § 1012.33(3)(a), Fla. Stat. (2010). Such contract "shall be renewed each year unless the district school superintendent, after receiving the recommendations under s. 1012.34, charges the employee with unsatisfactory performance and notifies of performance deficiencies . . . ." § 1012.33(3)(a), Fla. Stat. (2014).

The 2010 version of section 1012.33(3)(a) provided that "[e]ach district school board shall provide a professional service contract as prescribed herein." The 2011 amendments did away with that provision.

Section 1012.335, Florida Statutes, entitled "Contracts with instructional personnel hired on or after July 1, 2011," was also created in 2011 as a part of the Act. The statute provided that, beginning on July 1, 2011, "each individual newly hired as instructional personnel by the district school board shall be awarded a probationary contract. §

1012.335(2)(a), Fla. Stat. (2014). Upon successful completion of the probationary contract, the district school board may award an annual contract. . . . " *Id.* An **annual contract** is an "employment contract for a period of no longer than 1 school year which the district school board may choose to award or not award without cause." § 1012.335(1)(a).

Thus, under the Act, teachers hired on or after July 1, 2011, were given annual contracts which may or may not be renewed the following school year. The second district explained the effects of the 2011 changes to teacher contracts:

> [S]chool boards are no longer authorized to issue professional service contracts. Instead, the only contracts school boards are authorized to issue to members of their instructional staffs are probationary contracts for new hires and annual contracts for all others. To put it simply, tenure is no longer available for members of a school board's instructional staff hired on or after July 1, 2011.

*Gabriele v. Sch. Bd. of Manatee Cty.*, 114 So. 3d 477, 479 n.1 (Fla. 2d DCA 2013) (internal citation omitted).

Finally, the Act amended section 1012.22, adding the grandfathered salary schedule and performance salary schedule provisions under subsection (1)(c), entitled "Compensation and salary schedules." The "'Grandfathered salary schedule' means the salary schedule or schedules adopted by a district school board before July 1, 2014 . . . ." § 1012.22(1)(c)1.b. "'Performance salary schedule' means the salary schedule or schedules adopted by a district school board pursuant to subparagraph 5" of section 1012.22. § 1012.22(1)(c)1.d.

The grandfathered salary schedule (hereinafter "the grandfathered provision"), the statute here at issue, provides:

> (1)(c)4. Grandfathered salary schedule.—
>
> a. **The district school board shall adopt a salary schedule or salary schedules to be used as the basis for paying all school employees hired before July 1, 2014. Instructional personnel on annual contracts as of July 1, 2014, shall be placed on the performance salary schedule adopted under subparagraph 5. Instructional personnel on continuing contract or professional service contract may opt into the performance salary schedule if the employee relinquishes such contract and agrees to be employed on an annual contract under s.**

- 4 -

**1012.335.** Such an employee shall be placed on the performance salary schedule and may not return to continuing contract or professional service contract status. Any employee who opts into the performance salary schedule may not return to the grandfathered salary schedule.

§ 1012.22(1)(c)4. (emphasis added).

The performance salary schedule provision (hereinafter "the performance provision") provides:

5. Performance salary schedule.--**By July 1, 2014, the district school board shall adopt a performance salary schedule that provides annual salary adjustments for instructional personnel and school administrators based upon performance determined under s. 1012.34.** Employees hired on or after July 1, 2014, or employees who choose to move from the grandfathered salary schedule to the performance salary schedule shall be compensated pursuant to the performance salary schedule once they have received the appropriate performance evaluation for this purpose. However, a classroom teacher whose performance evaluation utilizes student learning growth measures established under s. 1012.34(7)(e)1 shall remain under the grandfathered salary schedule until his or her teaching assignment changes to a subject for which there is an assessment or the school district establishes equally appropriate measures of student learning growth as defined under s. 1012.34 and rules of the State Board of Education.

§ 1012.22(1)(c)5. (emphasis added).

Thus, although much of the Act went into effect in 2011, section 1012.22(1)(c)5. gave the school boards until July 1, 2014, to adopt "a performance salary schedule that provides annual salary adjustments for instructional personnel and school administrators based upon performance . . . ." § 1012.22(1)(c)5.

The Act was a legislative value judgment that injected performance evaluations into the educational system. The Act's introduction stated that it was amending certain section 1012.22 provisions "relating to instructional personnel and school administrator compensation and salary schedules; providing requirements for a performance salary schedule, a grandfathered salary schedule . . . ." Ch. 2011-1, at 1, Laws of Fla. The Act sets forth, at length, the new performance evaluation upon

which teachers are to be assessed. It also laid out the newly proposed compensation and salary schedules. The Act begins by explaining the rationale for the changes made to section 1012.34 "Personnel evaluation procedures and criteria:"

> **For the purpose of increasing student learning growth by improving the quality of instructional, administrative, and supervisory services in the public schools of the state**, the district school superintendent shall establish procedures for evaluating the performance of duties and responsibilities of all instructional, administrative, and supervisory personnel employed by the school district.

Ch. 2011-1, § 2, at 2, Laws of Fla. (emphasis added).

### *The Parties' Arguments*

The circuit court's interpretation of the grandfathered provision places those teachers on annual contract as of July 1, 2014, on the performance salary schedule. Teachers on continuing contract or professional services contract remain on the grandfathered salary schedule.

Both parties make plain meaning arguments. Where a statute is "clear and unambiguous and conveys a clear and definite meaning . . . the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)).

The Union contends that the first sentence of the grandfathered provision—specifically the clause that states "all school employees hired before July 1, 2014"—applies to *all* employees hired before that date, so that *all* pre-July 1, 2014, hires qualified for the grandfathered salary schedule. The Union further argues that the trial court failed to ascribe any meaning to the first sentence, and instead relied upon the second sentence of the provision, which it says is ambiguous.

The Board conversely argues that the second and third sentences of the grandfathered provision modify and expand upon the first sentence. It asserts that the trial court's interpretation is supported by the plain and ordinary meaning of the entire grandfathered provision.

### *Discussion*

The Board's interpretation of the entire grandfathered provision is consistent with its plain and ordinary meaning. The first sentence is crucial: "The district school board shall adopt **a** salary schedule or salary

schedules to be used as the basis for paying all school employees hired before July 1, 2014." § 1012.22(1)(c)4.a. (emphasis added). This sentence merely directs the school boards to create "a" salary schedule for all of its employees. It does not specify what type of salary schedule—the performance-based or the grandfathered—must be adopted.

The sentences after the first sentence describe how a salary schedule will be implemented. As the Board correctly argues, the second and third sentences of subsection (1)(c)4. expand upon the first sentence by providing which teachers will continue under the grandfathered salary schedule and which will be transferred to the new performance based salary schedule.

After the first sentence states that the school boards "shall" adopt salary schedules for all employees, the grandfathered provision continues on to provide: "Instructional personnel on annual contract as of July 1, 2014, shall be placed on the performance salary schedule adopted under subparagraph 5. Instructional personnel on continuing contract or professional service contract may opt into the performance salary schedule . . . ." if they so choose. Reading the first three sentences of the provision together, as we must, the second and third sentences are not in conflict with the substance of the first sentence; they specify precisely the type of salary schedule upon which different instructional personnel are to be placed. The Union's attempt to tease ambiguity into the provision does not find support from a plain meaning of the entire provision.

The Union focuses on the first sentence of the grandfathered provision that mentions "all employees," and argues that an annual contract teacher who worked for the Board in a previous year is necessarily an "employee" who was "hired" by the Board on or before the effective date of the new law. However, this argument neglects the statutory definition of an "annual contract."

Beginning on July 1, 2011, all newly hired teachers were awarded a probationary contract. § 1012.335(2)(a). Once that probationary term was successfully completed, they were then awarded an annual contract. As explained above, an annual contract is "an employment contract for a period of no longer than 1 school year which the district school board may choose to award or not award without cause." § 1012.335(1)(a). Thus, a teacher on annual contract is not, as the Union asserts, an "employee" who was hired before the effective date, because they would only be an employee for the school year, at which point they could potentially not be re-hired. *See Gabriele,* 114 So. 3d at 479 ("Annual contracts expire at the

end of the school year.  Accordingly, a teacher employed under an annual contract has no right to reemployment." (citation omitted)).

To further advocate for its interpretation, the Union points to the performance provision of section 1012.22.  The second sentence of that provision provides:  "Employees hired on or after July 1, 2014, or employees who choose to move from the grandfathered salary schedule shall be compensated pursuant to the performance salary schedule **once they have received the appropriate performance evaluation for this purpose**." (emphasis added).  The Union argues that this sentence makes it clear that "the performance salary schedule applies to employees hired on or after July 1, 2014."

This sentence must be read in the context of the entire statute.  The first sentence of the performance salary schedule provision provides:  "By July 1, 2014, the district school board shall adopt a performance salary schedule that provides annual salary adjustments for instructional personnel and school administrators based upon performance determined under s. 1012.34."  The second sentence continues on to provide that all employees hired on or after the applicable date or those employees who choose to move from the grandfathered schedule, shall be compensated pursuant to the performance schedule once they have been evaluated.

This provision is consistent with the grandfathered provision.  Although the Act was originally enacted in 2011, the school boards were given until 2014 to adopt a performance salary schedule.  And the focal point of the second sentence in the performance provision, providing for employees hired after the effective date, is on the placement of these employees on the performance schedule once they have received the proper evaluation.  Thus, the focus of the performance provision is on the mechanics of the performance salary schedule and when the teacher's performance evaluation is triggered, and less about which personnel will be placed on the schedule.  This phase-in process is further evidenced by the last sentence of the performance provision:

> However, a classroom teacher whose performance evaluation utilizes student learning growth measures . . . shall remain under the grandfathered salary schedule until his or her teaching assignment changes to a subject for which there is an assessment or the school district establishes equally appropriate measures of student learning growth as defined under s. 1012.34 and rules of the State Board of Education.

§ 1012.22(1)(c)5.[1]

Moreover, both the grandfathered provision and the performance provisions are included within subsection (1)(c) of the statute— "Compensation and salary schedules." The grandfathered provision describes which employees will be grandfathered into the salary schedule in place before July 1, 2014, and which of those instructional personnel (teachers) will be transitioned into the performance schedule. It explicitly sets forth that teachers on annual contract as of July 1, 2014, will be put on the performance salary schedule and states that teachers on continuing or professional contract have the choice to opt into the performance salary schedule. The performance provision then directs the school boards to adopt such a salary schedule that provides annual salary adjustments based on performance evaluations. It continues to set forth when new hires (hires on or after July 1, 2014) and teachers who teach in a subject for which there is no performance assessment begin to be compensated under the performance salary schedule. This makes sense, because it would be impossible to pay either of these two groups in accordance with the performance salary schedule without their performances first being evaluated.

Finally, in the grandfathered provision, the second sentence places teachers on annual contract *as of* July 1, 2014 on the performance salary schedule. However, in the performance provision, the legislature used "on or after" when talking about new hires or those employees on the grandfathered plan who could move to the performance salary schedule after a performance evaluation. Thus, the legislature's failure to utilize "on or after" in the grandfathered provision was not an oversight.

The Board's reading of the statute is consistent with the expressed goal of the Act. It was created "[f]or the purpose of increasing student learning growth by improving the quality of instructional, administrative, and supervisory services in the public schools of the state." Ch. 2011-1, § 2, at 2, Laws of Fla. The Legislature's value judgment was that students would be best served by being taught by teachers who are paid based on their

---

[1] We note that, effective May 10, 2016, this last sentence of the performance provision was deleted. It was deleted pursuant to Florida Senate Bill 1038, a Reviser's Bill, which deleted numerous provisions from various statutes "that have expired, have become obsolete, have had their effect, have served their purpose, or have been impliedly repealed or superseded." Ch. 2016-10, at 1, Laws of Fla. At any rate, its inclusion in the original version of the provision supports our interpretation that the purpose of the performance provision is to explain the phase-in process after evaluations are conducted.

performance.  To construe the statute to exclude a significant number of existing teachers from performance based evaluation criteria would undermine the expressed legislative intent.

*Affirmed.*

FORST and KLINGENSMITH, JJ., concur.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**